886

## In re CHOPAK.
### No. 180, Docket 20481.

Circuit Court of Appeals, Second Circuit.
March 18, 1947.

Writ of Certiorari Denied June 2, 1947.
See 67 S.Ct. 1516.

CLARK, Circuit Judge, dissenting.

———◆———

Jules Chopak, pro se, appellant.

J. Vincent Keogh, U. S. Atty., of New York City (Vine H. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., and Edward S. Szukelewicz, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This proceeding was heard before four of the District Judges after due notice to the appellant to show cause why he should not be disciplined for unprofessional conduct and conduct prejudicial to the administration of justice, contrary to Rule 3 of the Rules of the District Court for the Eastern District. The facts are not in dispute; they are set forth at length in the opinion below, 66 F.Supp. 265, and need not be here repeated. In summary, it may be said that one charge was based on an insulting letter addressed to one of the judges* of the Eastern District and protesting the form of an order which had been submitted for signature in a matter pending before him, and a second charge was based on a letter written to the appellant's client in which, without the slightest foundation, he ascribed prejudice to another of the judges;* he explained in testifying before a referee that the letter to his client meant that the judge would be prejudiced against him because he was a Jew and against his client because he was a Negro. The first letter above mentioned was the sequel to an order made on January 22, 1946, referring to a referee a motion to take testimony concerning the proper disposition of funds which had been paid to the Clerk of the District Court in satisfaction of a judgment obtained by the appellant's client and with respect to which the appellant claimed a contingent attorney's fee which the referee sustained. Whether or not this order of reference was correct or, as the appellant contends, was in violation of Federal Rules of Civil Procedure, rule

---

* Neither of these judges took part in the disciplinary proceeding.

53, 28 U.S.C.A. following section 723c, is not before us and we express no opinion upon it. Even if assumed to be wrong, the order could not serve as a justification for the appellant's letter, which passed all bounds of propriety regardless of any supposed provocation arising from his belief that the order was erroneous.

In response to the show cause order the appellant appeared by attorney but not in person. After being served with a formal order directing him to appear personally at a hearing set for June 3, 1946, he contented himself with sending a letter asking the court not to assemble "for the reason that I do not expect to appear for further hearing"; and he did not appear. He also wrote a second letter in which he stated that he had "visited voluntarily" upon himself the "punishment" of withdrawing two cases which had been pending in the Eastern District, and had resolved never again to appear before any of the judges of that court. However, the court was informed by Mr. Fay, who appeared on June 3rd not as appellant's attorney but as his friend and adviser, that this letter was not intended by the appellant as a resignation from the Bar of the Court. The Court's opinion, after considering the facts in detail, found that

"The record as a whole demonstrates a complete lack of understanding, on the part of the respondent, of his obligations as a member of the Bar of this Court toward the institution in which he conducts a client's cause."

 The order suspending the appellant from practice in the District Court for the Eastern District of New York is an appealable order. In re Schachne, 2 Cir., 87 F.2d 887. It cannot be doubted that the above quoted finding was fully justified; nor can it be doubted that the appellant's conduct required disciplinary action. What measure of discipline should be meted out rested in the sound discretion of the District Court; and, as stated by Chief Justice Marshall many years ago, an appellate tribunal "will always feel the delicacy of interposing its authority, and would do so only in a plain case." Ex parte Burr, 9 Wheat. 529, 530, 6 L.Ed. 152. In the case at bar we can see no abuse of discretion in the discipline imposed. The Court gave the matter very careful consideration and took into consideration, as it properly might, the fact that the appellant had been previously twice disciplined, once by the same Court and once by the Court of Customs and Patent Appeals. The order is affirmed.

CLARK, Circuit Judge (dissenting).

This case has given me much concern. Emphatically and eloquently the Supreme Court has safeguarded the right, even the duty, of free general and public criticism of the courts against repression by fines for contempt. Pennekamp v. Florida, 328 U. S. 331, 66 S.Ct. 1028; Bridges v. State of California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192, 159 A.L.R. 1346. This case really presents the same issue, albeit without the same publicity (since the criticism was made privately to the judge himself), but with greater severity of punishment (since appellant lost his professional standing for three years). It would be pleasant to feel justified in remaining silent. Even my partial and limited criticism of the conduct of the proceedings below is likely to be misunderstood and taken for more than I intend by judges whom I respect and with whom I have worked happily. Nevertheless the inexorable machinery of judicial review has brought the matter to me; and a firmly held conviction that the administration of justice cannot merely force, but must also justify, respect constrains me to express my concern thus publicly.

In what I shall have to say, I do not propose to defend the appellant's conduct. As I shall point out, I think he did go so far as to overstep the bounds of gentlemanliness and propriety expected of an officer of the court. Had there been some moderate discipline, with some recognition of the circumstances of extenuation, I should not have disagreed. But the appellant's conduct here rather highlights the need of care for the public appearance of the court's steps to preserve its own dignity. Selection of the appropriate course is obviously more difficult, the task more delicate, than disciplinary proceedings to protect the public against the consciously unscrupulous or dishonest of our profession.

Facing the problem squarely, I think candor compels the initial concession that here criticism of the court, if properly expressed, could not have been considered out of place. Over appellant's objection and contrary to Federal Rules of Civil Procedure, rule 53(b), a reference to a master had been made of a matter covered by contract of the three parties in interest and actually quickly settled upon hearing; but appellant, notwithstanding his objections and his success on the merits, found himself taxed with very considerable costs. Under the circumstances, reversal on appeal seems likely, though the expense of the process would have eaten up much of the amount involved. In addition, there seem to have been, or at least so he thought, circumstances of apparent peremptoriness and harshness directed against his interests in the original hearing, thus increasing his sense of injustice.[1] Service of the proposed order called for some response; and a dignified protest, with refusal to submit a counter order, would have been unexceptionable. What he actually wrote the judge, D.C., 66 F.Supp. 265, 266, was ungentlemanly, if not insulting; but it was the use of words like "despotic," "rule with passion and vehemence," rather than the fact of criticism, which made the offense. For this I would not say that no punishment should be exacted; three years' suspension does, however, suggest the vengeful.[2]

True, the record, and the opinion below, discuss additional matters. But the United States Attorney put the letter to us as the crucial issue; and it seems to me that this must be so. In fact, the reference to these other matters seems so much a shoring-up device as, in my mind, to lessen, rather than increase, confidence in the result. Reference to this angry letter as also a violation of the ethical canon against "Attempts to Exert Personal Influence on the Court" is far from persuasive. Use of private correspondence with the client, including vulgar, but probably not unusual, criticisms of juries, seems to me dubious. The allusion to another judge, even had it been direct and apt, might still seem a doubtful ground when thus extracted from a personal letter to the client; it seems all the more so in its actual vague, unoriented form which only became at all direct when at the open hearing appellant conceded its impropriety in trying somewhat desperately to withdraw it and apologize for it. In fact, his attempt at exculpation—that he did not actually know the judge in question—is used against him. D.C., 66 F.Supp. 265, 269. Finally he is condemned for not appearing at the proceedings on order of the court. For this he is properly to be criticized; but it seems to me one can only read his several letters to the court as showing not defiance, but fear and an attempt at finding some means of escaping the judgment which he correctly foresaw.[3] Read-

[1] The lawyer who appeared for appellant below and in whom the senior judge said he had "every confidence" presented an affidavit in which he swore that on the original hearing (where the reference was ordered) he attempted to appear in place of appellant to ask for a continuance, but was not allowed to speak, being discourteously ordered to "sit down." Cf. Frankfurter, J., in N. L. R. B. v. Donnelly Garment Co., 67 S.Ct. 756, 765: "It takes time to avoid even the appearance of grievances. But it is time well spent, even though it is not easy to satisfy interested parties, and defeated litigants, no matter how fairly treated, do not always have the feeling that they have received justice."

[2] While it was natural and proper for the judge involved to refuse to sit in the disciplinary proceedings, this probably worked against appellant by substituting subconscious pressures of group loyalty for the opposite pressure on a judge to lean backwards in a case involving himself.

[3] Thus see his final letter of May 31, 1946: "sincere regret that your Honors may feel any affront because of my non-personal appearance"; "the act is not with any intention of personal disrespect or offense. I am suffering intensely from the consequences of the trouble as a whole. I am not without fear of the outcome"; "I have visited upon myself voluntarily the following punishment [i. e., withdrawal from all cases before the court and a resolution never to appear again before any of the judges]"; "I pray your Honors to accept this letter as the solution and the termination of the matter. I pray you not to grind me down to disgrace beyond all of the loss that is now being occasioned by this matter," etc.

ing them, I cannot but believe that a suggestion from the Court as to the desirability and utility of an apology would have gone far towards effecting adjustment of this matter without the publicity it is now of necessity receiving.

How far our review should extend is not clear. Perhaps if any discipline is justified, we are not entitled to act because of what seems to us the severity of the sentence. But because I feel that not enough consideration has been given to the background matters here cited and to the importance of free criticism of the courts, I would return the whole matter for reconsideration by the District Court.