**In the Matter of David B. JACOBS, an Attorney and Counselor at Law**

**GRIEVANCE COMMITTEE FOR THE EASTERN DISTRICT OF NEW YORK, Petitioner–Appellee,**

v.

**David B. JACOBS, Esq., Respondent–Appellant.**

**No. 251, Docket 94–6049.**

United States Court of Appeals, Second Circuit.

Submitted Oct. 5, 1994.

Decided Dec. 23, 1994.

. . . .

David B. Jacobs, pro se.

Zachary W. Carter, Brooklyn, NY U.S. Atty. for the E.D. of N.Y. (John Gleeson, David C. James, Asst. U.S. Attys. for the E.D. of N.Y., of Counsel), for petitioner-appellee.

Before: FEINBERG, MESKILL and MAHONEY, Circuit Judges.

FEINBERG, Circuit Judge:

In this appeal, David B. Jacobs challenges the procedure by which the United States District Court for the Eastern District of New York, pursuant to General Rule 4 of the United States District Courts for the Southern and Eastern Districts of New York (Rule 4), disciplines an attorney who previously has been disciplined by a state court in which he is admitted to practice. By order issued January 31, 1994, the Grievance Committee of the United States District Court for the Eastern District of New York (federal grievance committee), a four-judge committee chaired by the chief judge, suspended Jacobs from the practice of law in that court during his suspension by the Appellate Division of the New York State Supreme Court, Second Department. Jacobs appeals from that order, alleging constitutional infirmities in the state court order on which it was based as well as in the procedure followed by the federal grievance committee under Rule 4. For the reasons stated below we affirm the order of the federal grievance committee.

I. Facts and Prior Proceedings

The underlying state disciplinary action arose out of a complaint by Patricia Warmhold to the Grievance Committee for the Tenth Judicial District of the Appellate Division of the New York State Supreme Court, Second Department (state grievance committee). Jacobs had represented Warmhold in 1987 and 1988 in a divorce proceeding. The state grievance committee initiated an investigation and deposed Jacobs in November 1989. Based on its investigation, the committee charged that (1) Jacobs had overbilled Warmhold on two occasions, (2) he had wrongfully obtained from her and filed in the Office of the Nassau County Clerk two confessions of judgment and (3) he had improperly attempted to limit his own malpractice liability. The committee then brought a petition against Jacobs to the Appellate Division. In May 1991, the Appellate Division appointed a special referee to hear evidence and make a report. The referee held five hearings from June to November 1991, at which Mrs. Warmhold was the only witness called by the state grievance committee. Jacobs testified in his own behalf and called only one other witness.

In June 1992, the referee sustained the charges of misconduct against Jacobs. The state grievance committee then petitioned the Appellate Division to confirm the report of the referee. In an Opinion and Order dated March 8, 1993, and reported at 188 A.D.2d 228, the Appellate Division confirmed the report and suspended Jacobs from practicing law for a three-year period commencing April 12, 1993. In imposing this sanction, the court took into consideration three prior disciplinary actions it had taken against Jacobs, two in 1986 and one in 1990. The court further ordered that Jacobs vacate the confessions of judgment against Warmhold. Jacobs's application for permission to appeal to the New York State Court of Appeals was denied. 82 N.Y.2d 681, 601 N.Y.S.2d 569, 619 N.E.2d 647 (1993).

On April 6, 1993, Chief Judge Thomas C. Platt of the United States District Court for the Eastern District of New York, as chairman of the grievance committee for that court, ordered Jacobs to show cause why he should not be suspended from practice in that court during the period of his state suspension. On June 10, 1993, the Chief Judge appointed a three-member committee (referred to hereafter as the committee of attorneys or the advisory panel) to assist the federal grievance committee. All three attorneys were retired judges. The advisory panel was to determine whether Jacobs should be suspended from practice in that court on the basis of his state court suspension. Under Rule 4, the federal grievance committee would follow the state order unless Jacobs showed by clear and convincing evidence infirmity of proof or of due process in the state proceeding, or that imposition of discipline by the district court would result in "grave injustice." For the convenience of the reader, we reproduce Rule 4 in full in Appendix A.

In response to the order to show cause, Jacobs sought to defend against suspension in the federal district court and to enjoin enforcement of the state court order of suspension. At a hearing before Judge Platt on June 9, 1993, Judge Platt refused to enjoin the state court order, stating that he lacked the authority to grant that relief.[1]

In a series of conferences with Jacobs beginning in August 1993, the advisory panel attempted to determine whether an evidentiary hearing would be needed in order for Jacobs to demonstrate constitutional infirmity in the state proceeding or grave injustice that would result from federal discipline. At a hearing held November 11, 1993, Jacobs suggested witnesses to be called at an evidentiary hearing. These proposed witnesses included Warmhold, the attorneys who had represented Warmhold's ex-husband in their divorce proceeding, the referee from Jacobs's state disciplinary proceeding and one or more judges of the Appellate Division. The advisory panel found that the information that might be learned from each of these potential witnesses either was already in the record of the state proceeding, could have been presented there or would add little of relevance.

In an opinion dated December 30, 1993, the advisory panel concluded that an evidentiary hearing would not be needed to determine whether the federal grievance committee should impose discipline on the basis of the state order. The panel went on to find that the state proceeding had been fair and free of constitutional infirmity and recommended that the federal grievance committee suspend Jacobs from practice in the federal district court. In an order issued on January 31, 1994 and signed by all four judges, the federal grievance committee adopted the opinion of the advisory panel. This appeal followed.

## II.  Discussion

Jacobs argues that the state disciplinary proceeding violated the federal and New York State constitutions. Jacobs urges us to enjoin enforcement of the state order and to reverse the federal grievance committee's decision based on that order. Additionally, Jacobs charges that certain aspects of the procedure followed by the federal grievance committee under Rule 4 violated due process.

## A.  Jurisdiction in this Court

As a preliminary matter, we consider our own jurisdiction to review the district court's decision to sanction Jacobs. A district court's authority to discipline attorneys admitted to appear before it is a well-recognized inherent power of the court. See *In re Snyder*, 472 U.S. 634, 643, 105 S.Ct. 2874, 2880, 86 L.Ed.2d 504 (1985); *Theard v. United States*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957). Precisely because this is an inherent, self-contained power of any court, the power of an appellate court to review a lower court's decision to

---

1. Jacobs has also initiated a separate action in the Eastern District, seeking injunctive and other relief from the state order. We take notice of an order issued by Judge Platt dismissing that complaint for failure to state a claim upon which relief may be granted. Jacobs v. Guido, No. 93–CV–3566(TCP) (E.D.N.Y. Aug. 24, 1994). An appeal from that order has been filed in this court but has not yet been calendared.

sanction an attorney is not self-evident. In an early case, the Supreme Court was asked by a suspended attorney to grant a writ of mandamus to the lower court restoring the attorney "to his place of attorney at the bar" of that court. In denying the motion, Chief Justice Marshall observed that "[s]ome doubts are felt in this Court respecting the extent of its authority as to the conduct of the Circuit and District Courts towards their officers...." *Ex Parte Burr*, 9 Wheat (22 U.S.) 529, 530, 6 L.Ed. 152 (1824). Nevertheless, the Court in *Burr* left open the possibility that it might intervene "where the conduct of the Circuit or District Court was irregular, or was flagrantly improper." 9 Wheat (22 U.S.) at 530.

In the instant case, the order of the federal grievance committee does not at first blush appear to be the usual final decision, appealable under 28 U.S.C. § 1291, since it is not a decision of a single district judge, but rather a decision of the court's four-judge grievance committee. It is possible to regard this case as an appeal under 28 U.S.C. § 1292(a) from the district court's denial of Jacobs's request for an order enjoining the state court disciplinary order. However, the notice of appeal states only that the appeal is from the opinion of the federal grievance committee and its order, and does not refer to Judge Platt's refusal (sitting alone) to enjoin the state order.[2]

Despite the perhaps metaphysical problem of "classifying" the nature of the appeal, this court had no difficulty more than a century after *Burr* in simply stating that "[t]he Circuit Courts have repeatedly entertained appeals from [attorney suspension orders], and their jurisdiction to do so has been assumed without discussion." *In re Schachne*, 87 F.2d 887, 888 (2d Cir.1937) (citations omitted). The court proceeded to review the district court's determination for abuse of discretion. *Id.;* see also *In re Chopak*, 160 F.2d 886, 887 (2d Cir.), cert. denied, 331 U.S. 835, 67 S.Ct. 1516, 91 L.Ed. 1848 (1947).

The Supreme Court and circuit courts appear to have concluded that while regulation of attorney behavior should remain primarily within the discretion of each district court, it is contrary to fundamental notions of fairness to close off all avenues of review, even if only for the most glaring irregularities. Where a court has clearly abused its discretion to discipline an attorney, "some suitable appellate remedy" would have to apply. *Thatcher v. United States*, 212 F. 801, 804–05 (6th Cir.1914), appeal dismissed, 241 U.S. 644, 36 S.Ct. 450, 60 L.Ed. 1218 (1916). This court in *Schachne* apparently found this reasoning persuasive in confirming its own jurisdiction to review an order of a district court suspending an attorney. We find no reason to deviate from this well-established precedent.

**B. The State Proceeding**

■ Despite Jacobs's failure to appeal from Judge Platt's June 1993 refusal to enjoin the state disciplinary order, he asks us to grant such an injunction. Putting to one side the jurisdictional question posed by Jacobs's notice of appeal, already discussed above, on this record we cannot enjoin enforcement of the state order. See *Theard*, 354 U.S. at 281–82, 77 S.Ct. at 1276–77; *Selling v. Radford*, 243 U.S. 46, 50, 37 S.Ct. 377, 378, 61 L.Ed. 585 (1917). The New York State judiciary regulates the practice of law in the courts of the state, and generally federal courts must not interfere with its authority to do so. Even assuming that in an extraordinary case a federal court could conceivably intervene to correct a gross injustice by a state judiciary in regulating the practice of law in the state, this is not such a case.

We must still face the question whether the federal grievance committee could properly rely upon the state disciplinary proceeding as a basis for taking similar disciplinary action at the federal level. The district court had to examine the state proceeding for consistency with the requirements of due process, adequacy of proof and absence of any indication that imposing discipline would result in grave injustice. *Selling*, 243 U.S. at 51, 37 S.Ct. at 379; Rule 4(g).

---

**2.** As we have already noted, see note 1, Jacobs has brought a separate appeal from a later order of Judge Platt.

Jacobs vigorously argues that the Appellate Division lacked subject matter jurisdiction over pivotal issues in his state disciplinary proceeding. Thus, Jacobs asserts that central to the state's decision to discipline him were findings regarding the fee he actually charged Warmhold and what fee he reasonably could have charged. Determination of his actual fee, Jacobs claims, is an issue on which New York State statutory and constitutional law entitle him to a jury trial. Absent a jury trial, according to Jacobs, the Appellate Division lacked jurisdiction to impose discipline on the basis of a finding regarding his actual fee. At oral argument in this court, Jacobs stated that he had presented this argument to the Appellate Division on a motion for reconsideration but that that court did not reach the issue. Nor did the federal grievance committee reach the issue. Jacobs's argument over the state-law limits on the authority of the Appellate Division to find facts in a disciplinary proceeding is obviously a state law issue that must be addressed to the courts of New York.

As to those issues properly before the federal grievance committee, the advisory panel found that the state proceeding was fair and free of federal constitutional infirmity. We agree with the panel's assessment of the state proceeding. Jacobs's claims of Fifth, Sixth and Eighth Amendment violations in the state proceeding are based on the groundless assertion that an attorney subject to a state disciplinary proceeding enjoys the full panoply of federal constitutional protections that apply to a criminal prosecution. His claim that the Seventh Amendment required a jury trial in the state proceeding rests on an equally flawed assertion that the Seventh Amendment applies to state as well as federal actions, see *Minneapolis & St. Louis R.R. v. Bombolis*, 241 U.S. 211, 217, 36 S.Ct. 595, 596–97, 60 L.Ed. 961 (1916), and that any action in which an attorney's fee is at issue (including the state disciplinary proceeding against Jacobs) is a suit at common law, in which he is entitled to a jury trial.

For the reasons stated in the opinion of the advisory panel adopted by the federal grievance committee, we find no infirmity of proof or lack of due process in the state proceeding or risk of grave injustice that would prohibit the district court from suspending Jacobs on the basis of the state order.

## C. Rule 4

In addition to alleging errors in the state proceeding, Jacobs challenges the Rule 4 procedure under which the federal grievance committee suspended him on the basis of the state order.

Under Rule 4(i), a complaint alleging that an attorney has been disciplined by another court (as specified in Rule 4(d)) is directed to the chief judge of the court. The chief judge in turn refers the complaint to the committee on grievances, which we have already referred to as the federal grievance committee. In this case, the committee was composed of Chief Judge Thomas C. Platt as Chairman and Judges Leonard D. Wexler, Reena Raggi and Arthur D. Spatt. The committee on grievances decides, with or without investigation, whether to pursue the charges against the attorney. If it decides to pursue the charges, the committee serves the attorney with a statement of charges and an order to show cause why the federal court should not impose discipline. Following the attorney's answer, a hearing before "a panel of attorneys" (the advisory panel) is scheduled. After the hearing, the panel submits its findings and recommendations to the grievance committee.

The attorney has the burden to show:

by clear and convincing evidence: (1) ... that there was such an infirmity of proof of misconduct by the attorney as to give rise to the clear conviction that [the district] court could not consistently with its duty accept as final the conclusion of the other court; or (2) that the procedure resulting in the investigation or discipline of the attorney by the other court was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or (3) that the imposition of discipline by [the district] court would result in grave injustice.

Rule 4(g). Failing such a showing, the federal grievance committee may discipline the attorney based on the other court's order. Rule 4(d). Such discipline may include suspension. Rule 4(g).

Jacobs's challenges to the procedure followed by the federal grievance committee may be summarized as follows. First, the grievance committee failed to follow its own rules by not serving him with the complaint that precipitated the federal disciplinary proceeding under Rule 4(i). Second, the order to show cause issued by the chief judge, with the Opinion and Order of the Appellate Division appended, did not constitute adequate notice of the charges against him. Third, the advisory panel's refusal to hold an evidentiary hearing denied him an opportunity to be heard. Finally, the chief judge's request that Jacobs refrain from practicing before the district court pending disposition of his case by the federal grievance committee denied him due process.

We address each of these claims in turn.

■ Rule 4(i) does not entitle Jacobs to be served with the complaint triggering the federal disciplinary proceeding against him. The rule states simply that "[c]omplaints in writing ... will be directed to the chief judge...." It says nothing about the form of a complaint and does not mandate that the complaint be served upon the respondent attorney. Indeed, it appears that the complaint referred to in Rule 4(i) may simply be a notification by the state grievance committee or the Appellate Division, similar to the notice that the federal district court is required to issue to other courts, under another provision in Rule 4, following its own imposition of sanctions. See, e.g., *Matter of Sassower*, 700 F.Supp. 100, 101 (E.D.N.Y.1988), aff'd, 875 F.2d 856 (2d Cir.1989) (describing event precipitating district court's issuance of order to show cause as "receipt ... of notification of ... disbarment").

■ Jacobs next claims that service upon him of Judge Platt's order to show cause did not provide him with adequate notice as it contained "no statement of any charges." This claim is also meritless. What Jacobs fails to mention is that appended to the order to show cause was the March 8, 1993 Opinion and Order of the Appellate Division. The Opinion and Order, which Jacobs surely knew about even before he received a copy from the chief judge, clearly sets out the charges against Jacobs. Rule 4(i) requires no more. Constitutional due process requires only notice "of such nature as reasonably to convey the required information." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The Opinion and Order of the Appellate Division certainly passes the *Mullane* standard.

■ Jacobs's claim that he was entitled to a full evidentiary hearing before the advisory panel, and his related claim that the panel should have enforced subpoenas at his request, finds no support in Rule 4 or in the requirements of due process. Rule 4(i) states simply that "[u]pon the respondent attorney's answer to the charges the matter will be scheduled for prompt hearing...." A simple hearing, at which an attorney sets out arguments in his defense, is not the same as a full evidentiary hearing, at which an attorney may elicit testimony and other factual support for his defense. The rule does not entitle a respondent attorney to a full evidentiary hearing where he has had ample opportunity to present evidence in the state proceeding, where the record of the state proceeding before the advisory panel is complete, and where the attorney has failed to show how new evidence would shed significant light on a claimed constitutional infirmity in the state proceeding.

■ With regard to the due process claim, we examine the advisory panel's decision not to hold a full evidentiary hearing according to the balancing of private and public interests articulated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Under *Eldridge*, we consider the private interest affected by the action of the federal grievance committee in following the state order without an evidentiary hearing, the risk of erroneous deprivation of that private interest, and the federal grievance committee's interest in foregoing an evidentiary hearing.

■ The private interest affected by the action of the federal grievance committee is Jacobs's right to practice law in the United States District Court for the Eastern District of New York. We appreciate the importance of this interest and the impact that suspension will have on Jacobs's ability to earn a living at his chosen profession.

However, the risk of erroneous deprivation of Jacobs's interest by failing to hold an evidentiary hearing is extremely low. Jacobs had an opportunity to present evidence to the special referee appointed by the Appellate Division and to appeal any errors in that proceeding to the Appellate Division. Furthermore, Jacobs had an opportunity to explain to the advisory panel appointed by the federal grievance committee how a new evidentiary hearing would enable him to carry his burden of proof under Rule 4(g). The advisory panel gave careful consideration to Jacobs's summary of the evidence he hoped to present, and found that the evidence Jacobs wanted to produce either was already in the record of the state proceeding, could have been put into that record or was of no significance. See *Dixon v. Love*, 431 U.S. 105, 113–14, 97 S.Ct. 1723, 1727–28, 52 L.Ed.2d 172 (1977) (risk of erroneous revocation of driver's license absent evidentiary hearing not "significant" where licensee had opportunity to challenge disciplinary actions that were predicate for revocation). Upon review of the record, we find no evidence suggesting any appreciable risk that without an evidentiary hearing Jacobs might be erroneously deprived of his interest in practicing law in the district court.

Finally, the advisory panel had a clear interest in not holding an evidentiary hearing where Jacobs had made no showing that such a hearing would reveal an infirmity of proof or lack of due process in the state proceeding or risk of grave injustice from suspending Jacobs on the basis of the state order. An evidentiary hearing would require the grievance committee to expend valuable resources of time and effort on a proceeding which, based on Jacobs's statements to the committee at the November 11, 1993 meeting, would do no more than replicate Jacobs's state hearing or give Jacobs an unwarranted second opportunity to try the issues all over again.

Given the low risk of erroneous deprivation of Jacobs's interest in practicing before the district court and the important public interest in not expending judicial resources on a proceeding that would largely duplicate a prior state proceeding, we hold that the advisory panel's denial of Jacobs's request for an evidentiary hearing did not violate Jacobs's due process rights.

Finally, Jacobs apparently claims that Judge Platt's request that he voluntarily refrain from practicing before the district court pending disposition of his case by the federal grievance committee denied Jacobs due process. In June 1993, when Judge Platt asked Jacobs whether he would voluntarily refrain from practicing before the district court during the pendency of the federal grievance committee proceeding, Jacobs stated that he would not be prejudiced by such a concession and therefore agreed. Thus, although Jacobs initially objected to Judge Platt's request, he ultimately agreed to the proposed interim measure. Jacobs not only voluntarily complied with the request, but he also admitted that he would not be prejudiced by his compliance. The advisory panel ended its deliberations within five months. Under the circumstances, we decline to address Jacobs's argument on appeal that the district court violated due process by requesting that he refrain from practicing in the district court pending the outcome of the federal grievance committee proceeding.

We have considered all of appellant's arguments, and they are without merit. We affirm the order of the federal grievance committee.

*Appendix A*

Rule 4. Discipline of Attorneys

(a) The chief judge shall appoint a committee of the board of judges known as the committee on grievances, which under the direction of the chief judge shall have charge of all matters relating to discipline of attorneys. The committee on grievances may entertain complaints in writing from any source. Complaints, and any files based on

them, shall be treated as confidential. The chief judge shall appoint a committee of attorneys who are members of the bar of this court to advise or assist the committee on grievances. Members of this committee will investigate complaints, and will serve as members of hearing panels.

(b) If it appears, after notice and opportunity to be heard, that any member of the bar of this court has been convicted of a felony in any federal court, or in the court of any state, territory, district, commonwealth or possession, the member's name shall be struck from the roll of members of the bar of this court.

(c) If it appears, after notice and opportunity to be heard, that any member of the bar of this court has been convicted of a misdemeanor, in any federal court or in the court of any state, territory, district, commonwealth, or possession, the member may be disciplined by this court, in accordance with the provisions of paragraph (g).

(d) If it appears, after notice and opportunity to be heard, that any member of the bar of this court has been disciplined by any federal court or by the court of any state, territory, district, commonwealth or possession, the member may be disciplined by this court, in accordance with the provisions of paragraph (g).

(e) If it appears, after notice and opportunity to be heard, that any member of the bar of this court has resigned from the bar of any federal court or the court of any state, territory, district, commonwealth or possession while an investigation into allegations of misconduct by the attorney were pending, the member may be disciplined by this court, in accordance with the provisions of paragraph (g).

(f) If, in connection with activities in this court, any attorney is found guilty by clear and convincing evidence, after notice and opportunity to be heard, of conduct violative of the Codes of Professional Responsibility of the American Bar Association or the New York Bar Association from time to time in force, the attorney may be disciplined by this court, in accordance with the provisions of paragraph (g).

(g) Discipline imposed pursuant to paragraphs (c), (d), (e) or (f) may consist of suspension or censure. In the case of an attorney who is a member of the bar of this court, it may also consist of striking the name of the attorney from the roll. In the case of an attorney admitted *pro hac vice*, it may also consist of precluding the attorney from again appearing at the bar of this court. Upon the entry of an order of preclusion, the clerk shall transmit to the court or courts where the attorney was admitted to practice a certified copy of the order, and of the court's opinion, if any.

Discipline may be imposed by this court with respect to paragraphs (d) and (e) unless the member of the bar concerned establishes by clear and convincing evidence: (1) with respect to paragraph (d) that there was such an infirmity of proof of misconduct by the attorney as to give rise to the clear conviction that this court could not consistently with its duty accept as final the conclusion of the other court; or (2) that the procedure resulting in the investigation or discipline of the attorney by the other court was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or (3) that the imposition of discipline of this court would result in grave injustice.

(h) If it appears, after notice and opportunity to be heard, that any lawyer not a member of the bar of this court has appeared at the bar of this court without permission to do so, said lawyer may be precluded from again appearing at the bar of this court. Upon the entry of an order of preclusion, the clerk shall transmit to the court or courts where the attorney was admitted to practice a certified copy of the order, and of the court's opinion, if any.

(i) Complaints in writing alleging that any member of the bar of this court is in a category described in paragraphs (b) through (e), or that any attorney practicing in this court has committed the misconduct referred to in paragraph (f), will be directed to the chief judge, who shall refer such complaints to the committee on grievances, which may designate an attorney selected from the panel of attorneys to investigate the allegations if it deems investigation necessary or war-

ranted. If, with or without investigation, the committee on grievances deems that the charges require prosecution, a statement of charges shall be served on the attorney concerned together with an order to show cause why discipline should not be imposed. Upon the respondent attorney's answer to the charges the matter will be scheduled for prompt hearing before a panel of attorneys, which will report findings and recommendations. After such a hearing and report, or if no timely answer is made by the respondent attorney or if the answer raises no issue requiring a hearing, such action shall be taken as justice and this rule may require.

(j) Any attorney who has been suspended or whose name has been struck from the roll of the members of the bar of this court may apply in writing to the chief judge, for good cause shown, for the lifting of suspension or for reinstatement to the rolls. The committee on grievances shall act upon the application, either immediately or after receiving findings and recommendations from a hearing panel of attorneys to which the application has been referred.

(k) Misconduct of any attorney in the presence of this court or in any manner in respect to any matter pending in this court may be dealt with directly by the judge in charge of the matter or at said judge's option referred to the committee on grievances, or both.

(l) Whenever it appears that an attorney admitted to practice in the court of any state, territory, district, commonwealth or possession, or in any other federal court, has in this court been convicted of any crime or disbarred, suspended or censured the clerk shall send to such other court or courts a certified copy of the judgment of conviction or order of disbarment, suspension or censure, and a statement of the attorney's last known office and resident address.