**In the Matter of George EDELSTEIN, an Attorney.**

**Docket No. 00–8301.**

United States Court of Appeals, Second Circuit.

Submitted: April 11, 2000.

Decided: May 15, 2000.

George Edelstein, New York, N.Y., submitted a pro se brief.

Before: NEWMAN, KEARSE, and KATZMANN, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This motion to stay and revoke an order of disbarment concerns the scope of review appropriate for challenges to "reciprocal discipline"—disbarment or suspension summarily imposed after some other court has taken such action based on a plenary inquiry. George Edelstein moves to stay and revoke this Court's order of January 10, 2000, disbarring him from practice before this Court. Our action was taken, pursuant to Second Circuit Local Rule 46(f), following Edelstein's disbarment by the United States District Court for the Southern District of New York. We conclude that the scope of review of orders for reciprocal discipline is limited and that Edelstein has not shown that relief is warranted in his case. Accordingly, the motion is denied.

## Background

Edelstein's discipline by the District Court was based on three transactions with a client who became a confidential informant ("the Informant") for the Government. As Edelstein acknowledges in his papers to this Court, the material facts concerning these transactions are undisputed. In 1991, while representing the Informant in a criminal case, Edelstein loaned him more than $20,000. After his client's conviction and unsuccessful pursuit of appellate remedies, the client informed Edelstein that he was a confidential informant for the Government. That disclosure prompted Edelstein to refer the Informant to a law firm to represent him in negotiations concerning his informant status.

When the law firm withdrew from the representation, the Informant asked Edelstein to represent him, and Edelstein agreed to do so in December 1992. He charged no fee, but asked the Informant to repay him the more than $20,000 that was still owed, and urged an Assistant United States Attorney to expedite whatever payments the Government was going to make so that the Informant could repay Edelstein.

The third transaction occurred in the summer of 1994 while Edelstein was representing Bartolome Moya in a then-pending criminal case in the Southern District. After Moya fled while on bail, Edelstein told the prosecutors that he did not know Moya's whereabouts. Edelstein then met with the Informant and told him that he would disclose Moya's whereabouts to him if the Government would pay a reward for the information. The allegations in the subsequent disciplinary proceeding charged that Edelstein told the Informant to demand a $30,000 reward to be divided with Edelstein, not to reveal that Edelstein was the source of the disclosed information, and later to increase the reward demand to $100,000. Edelstein concedes the basic facts of the alleged conversations with the Informant, but contends that he was engaged in a ruse to determine whether the Government was improperly using the Informant to extract information from Edelstein, who was Moya's counsel.

Alerted by the Informant to Edelstein's proposal to disclose Moya's whereabouts upon payment of a reward to the Infor-

mant, the Government moved to disqualify Edelstein as counsel for Moya. Then–Chief Judge Griesa granted the motion and referred the matter concerning Edelstein's conduct to the Grievance Committee for the Southern District. The Committee appointed William Schwartz, Esq., to present charges of professional misconduct against Edelstein and named a panel of three lawyers ("the Panel") to consider the charges.

In July 1996, the Committee issued to Edelstein an order to show cause why he should not be disciplined on the basis of six charges of violating a Disciplinary Rule ("DR") of the Code of Professional Responsibility of the New York State Bar Association. Charge One alleged violation of DR 5–103(B), which specifies that a lawyer "[w]hile representing a client … [may not] advance or guarantee financial assistance to the client." Charge Two alleged a violation of DR 5–101(A), which prohibits a lawyer from accepting "employment if the exercise of professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property or personal interests." Charge Three alleged violation of DR 4–101(B)(2), which prohibits a lawyer from knowingly using "a confidence or secret of a client to the disadvantage of the client." Charge Four alleged violation of DR 4–101(B)(3), which prohibits knowingly using "a confidence or secret of a client for the advantage of the lawyer or a third person." Charge Four contained the same alternative allegation as Charge Three. Charge Five alleged violation of DR 1–102(A)(4), which prohibits a lawyer from engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation." Charge Six alleged violation of DR 1–102(A)(8), which prohibits conduct "that adversely reflects on the lawyer's fitness to practice law."

Protracted negotiations ensued between the Panel and an attorney representing Edelstein concerning hearing dates, with delays encountered because of Edelstein's reported hospitalization for severe depres-sion and his decision, as of December 8, 1998, to proceed *pro se.*

In March 1999, Judge Shira A. Scheindlin, Chairman of the Southern District's Grievance Committee, granted a motion by Howard G. Sloane, Esq. (who had been appointed to prosecute the charges after Schwartz withdrew) to amend Charges Three and Four to allege alternatively that if Edelstein did not know Moya's whereabouts, his conduct violated DR 1–102(A)(5), which prohibits engaging in conduct "that is prejudicial to the administration of justice." Judge Scheindlin also ordered Edelstein to show cause why he should not be disciplined pursuant to the amended charges.

Edelstein moved before the panel for summary judgment, acknowledging that there were no disputed issues of fact. Sloane responded with a memorandum contending that the charges were all established. In an exchange of letters between Edelstein and the Panel, the Panel scheduled a hearing for April 26, and, upon Edelstein's failure to appear, rescheduled the hearing for May 3, 1999. Edelstein declined to appear on the ground that the Panel had not indicated any factual issues on which his testimony was needed. He also complained that the Panel had denied him the opportunity to summon witnesses and to require the production of documents. The Panel advised Edelstein that if he did not appear on May 3, the Panel would proceed to consider the charges.

On June 2, 1999, the Panel issued a detailed, 24–page report. The Panel concluded that Charges One and Two and the alternative versions of Charges Three and Four were established. No findings were made with respect to Charges Five and Six, which were deemed subsumed within or superfluous to the findings on Charges Three and Four, as amended. The Panel recommended that Edelstein's name be stricken from the roll of attorneys admitted to the bar of the Southern District.

On October 21, 1999, the Southern District's Grievance Committee considered the Panel's report and ordered Edelstein's name stricken from the court's roll of attorneys. On January 10, 2000, the Acting Clerk of this Court entered an order on behalf of the Court of Appeals, pursuant to Rule 46(f)(1) of the Local Rules of this Court, see 2d Cir. R. 46(f)(1), disbarring Edelstein from the practice of law before the Court of Appeals. This Court's order was based on the Southern District's order and was stated to become effective 24 days after service upon Edelstein. On February 1, 2000, Edelstein filed in this Court, pursuant to 2d Cir. R. 46(f)(2), the pending motion to stay or revoke this Court's order of disbarment and on February 17, 2000, filed a memorandum in support of his motion.

### Discussion

Edelstein makes the following contentions: (1) DR 5–103(B), the basis of Charge One, prohibits loans only by lawyers representing clients in civil cases, (2) DR 5–101(A), the basis of Charge Two, was not violated because Edelstein disclosed to his client the facts concerning the client's debt to Edelstein, (3) DR 1–102(A)(5), the basis for the alternative versions of Charges Three and Four was not violated because Edelstein could not predict that his "ruse" concerning a plan to obtain money in exchange for disclosure of Moya's whereabouts would result in his disqualification from his client's criminal case. The Panel's report concluded that DR 5–103(B) applies to loans by a lawyer to a client in a criminal case, that DR 5–101(A) was violated by Edelstein's re-employment at a time when loans to the Informant-client remained outstanding and by Edelstein's failure to advise the Informant-client as to how the debt might affect the lawyer's professional judgment, and that DR 1–102(A)(5) was violated because a lawyer of Edelstein's experience, including twenty years with the U.S. Department of Justice, should have realized that his "ruse" would prejudice the administration of justice.

Edelstein's grounds for challenging this Court's disbarment order raise an initial, and ultimately decisive, issue as to the scope of review when this Court is asked to reconsider its imposition of reciprocal discipline. Our Local Rule 46(f)(1) requires that, whenever an order disbarring or suspending an attorney from practice has been entered in "any other court of record, federal or state," the Clerk of this Court shall enter an order disbarring or suspending the attorney from practice before this Court upon terms and conditions comparable to those set forth by the other court. 2d Cir. R. 46(f)(1). Our Local Rule 46(f)(2) provides:

Within twenty days from the date of service of this court's order [for reciprocal discipline under Rule 46(f)(1) ], a motion may be filed in this court either by [the disciplined] attorney or the Committee [on Admissions and Grievances of the Court of Appeals] for a modification or revocation of the order of this court. Any such motion shall set forth specifically the facts and principles relied on by applicant as showing cause why a different disposition should be ordered by this court.

2d Cir. R. 46(f)(2).

We think it clear that the "different disposition" for which Rule 46(f)(2) authorizes a motion means a disposition different from the initial, automatic order of discipline required by Rule 46(f)(1), and not different from the disposition made by the other court that took the initial action on which our Court's reciprocal discipline was based. In cases such as this, where the court initially imposing discipline is a district court within this Circuit, plenary review of the district court's order of discipline is available upon appeal to this Court. See In re Jacobs, 44 F.3d 84, 88 (2d Cir. 1994).

Upon such plenary review, the standard of review for most issues is abuse

of discretion, *see MacDraw, Inc. v. CIT Group Equipment Financing, Inc.*, 138 F.3d 33, 37 (2d Cir.1998); *Grievance Committee for the Southern District of New York v. Simels*, 48 F.3d 640, 645 (2d. Cir. 1995); *In re Grievance Committee of the United States District Court, District of Connecticut*, 847 F.2d 57, 61 (2d Cir.1988), sometimes stated to be "clear abuse of discretion," *In re Gouiran*, 58 F.3d 54, 56 (2d Cir.1995); *see In re Jacobs*, 44 F.3d at 88. The issue of whether a particular disciplinary rule prohibits the conduct in question is reviewed *de novo*. *See Simels*, 48 F.3d at 645; *In re Grievance Committee*, 847 F.2d at 61.[1]

■ Thus, the issue as to our scope of review on the pending motion to revoke this Court's order of reciprocal discipline is whether this motion can be a substitute for the plenary review of all issues available on appeal from the Southern District's order or whether our scope of review is more limited. The Supreme Court, considering its own authority to impose reciprocal discipline after disbarment by a state court, has ruled that more limited review is appropriate. *See Selling v. Radford*, 243 U.S. 46, 50–51, 37 S.Ct. 377, 61 L.Ed. 585 (1917). In *Selling*, the Court identified three circumstances that would justify not imposing reciprocal discipline:

1. That the state procedure from want of notice or opportunity to be heard was wanting in due process; 2, that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not consistently with our duty accept as final the conclusion on that subject; or 3, that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do.

*Id.* at 51, 37 S.Ct. 377. *See In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (applying *Selling*); *Theard v. United States*, 354 U.S. 278, 282–83, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957) (confirming *Selling* approach); *In re Friedman*, 51 F.3d 20, 22 (2d Cir.1995) (applying *Selling* to district court's reciprocal discipline following state court disbarment).[2]

---

1. Within this Circuit, plenary review of a state grievance committee's order of discipline is available on direct review in Connecticut. *See, e.g., Somers v. Statewide Grievance Committee*, 245 Conn. 277, 715 A.2d 712 (1998). In Vermont, because the Professional Conduct Board acts as an arm of the Vermont Supreme Court, its findings and recommendations, though accorded deference, are not technically reviewed by that Court, which "makes its own ultimate decisions on discipline." *In re Berk*, 157 Vt. 524, 527–28, 602 A.2d 946 (1991). In New York, discipline imposed by a unanimous order of the Appellate Division is not subject to an appeal as of right in the absence of a substantial constitutional question. *See, e.g., In re Friedman*, 83 N.Y.2d 888, 613 N.Y.S.2d 126, 635 N.E.2d 295 (1994). A federal constitutional challenge to state-ordered discipline can be maintained on further review by the Supreme Court. *See, e.g., Zauderer v. Office of Disciplinary Counsel of the Supreme Court*, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (First Amendment challenge to state-ordered public reprimand of attorney); *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (Self–Incrimination Clause challenge to state-ordered disbarment of attorney).

2. Some Justices of the Supreme Court have expressed the view that a court considering reciprocal discipline must give plenary consideration to the attorney's conduct. *See In re Ruffalo*, 390 U.S. at 553, 88 S.Ct. 1222 (opinion of White, J., with whom Marshall, J., joins, concurring in the result) ("[Federal] court [imposing reciprocal discipline] was obligated to determine for itself the facts of the attorney's conduct and whether that conduct had been so grievous as to require disbarment."); *In re Disbarment of Crow*, 359 U.S. 1007, 1008, 79 S.Ct. 1152, 3 L.Ed.2d 1025 (1959) (Douglas, J., with whom Black, J., joins, dissenting) ("It is for us to make our own determination as to the fitness of an attorney to remain on our rolls.").

The limited circumstances in which the Supreme Court said that reciprocal discipline should be withheld were announced in the context of initial disbarment by a state's highest court, a context in which the Court then believed it lacked power to review the state court's decision. *See Selling*, 243 U.S. at 50, 37 S.Ct. 377. *But see Spevack v. Klein*, 385 U.S. 511, 519–20, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (invalidating state court disbarment on federal constitutional challenge). Since we have plenary authority to review the disciplinary decision of the Southern District on direct review, *see In re Jacobs*, 44 F.3d at 88, the limited inquiry contemplated by *Selling* is at least as appropriate to the reciprocal discipline challenged in the pending motion, as it would be to such discipline imposed after state court discipline. *See In re Evans*, 834 F.2d 90, 91 (4th Cir.1987) (applying *Selling* to court of appeals reciprocal discipline based on district court's disbarment).

The three limited circumstances identified in *Selling* have been incorporated into the reciprocal discipline rules of many courts. *See, e.g., Rules of Disciplinary Enforcement of the Court of Appeals for the First Circuit*, Rule II(D)(1)-(3); *Rules of Attorney Disciplinary Enforcement of the Court of Appeals for the Third Circuit*, Rule 10(5)(a)-(c); *Rules Governing Attorney Discipline in the U.S. Court of Appeals for the Eleventh Circuit*, Rule 5(B)(1), (2), (C)(1); *Rules of Disciplinary Enforcement for the United States Court of Appeals for the District of Columbia Circuit*, Rule IV(c)(1–3); *Federal Circuit Attorney Discipline Rules*, Rule 8(c)(1)-(3). These courts also add a fourth ground for relief, that the attorney's misconduct warrants "substantially different discipline" than that imposed by the court prompting reciprocal discipline. *E.g., Rules of Disciplinary Enforcement of the Court of Appeals for the First Circuit*, Rule II(D)(4).

In the pending case, none of the three grounds identified in *Selling* warrants relief from reciprocal discipline. Edelstein makes no challenge on this motion to the notice and hearing in the Southern District's proceedings, nor does he dispute the facts. His only contentions concern the legal sufficiency of the evidence to support the charges. Whatever view we might take on plenary review as to whether DR 5–103(B) applies to representation in criminal cases, whether DR 5–101(A) requires disclosure of how an attorney's financial interest might affect his judgment, or whether Edelstein's "ruse" prejudiced the administration of justice in violation of DR 1–102(A)(5), the Southern District's conclusion adverse to Edelstein on all three matters does not present the sort of "grave reason," *Selling*, 243 U.S. at 51, 37 S.Ct. 377, that warrants revoking our order of reciprocal discipline.

Accordingly, the motion to stay or revoke this Court's order of disbarment is denied. The filing of this ruling will terminate the stay of our disbarment order of January 20, 2000, which was automatically stayed by the filing of Edelstein's motion, *see* 2d Cir. R. 46(f)(2).