**In re R. Greg BAILEY**

No. 98–7098.

United States Court of Appeals,
Federal Circuit.

May 17, 1999.

R. Greg Bailey, pro se, of St. Louis, Missouri.

Ming–Yuen Meyer–Fong, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for amicus curiae Department of Veterans Affairs. With him on the brief were David M. Cohen, Director, and Kathryn A. Bleecker, Attorney. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel and David J. Barrans, Staff Attorney, U.S. Department of Veterans Affairs.

Before MICHEL, RADER, and SCHALL, Circuit Judges.

Opinion for the court filed by Circuit Judge MICHEL. Dissenting opinion filed by Circuit Judge SCHALL.

MICHEL, Circuit Judge.

R. Greg Bailey appeals from a June 11, 1998 disciplinary order of public reprimand issued against him by the United States Court of Appeals for Veterans Claims.[1] The court disciplined Bailey for failing to prosecute diligently the appeal of a veteran whom he had volunteered to represent on a pro bono basis and for failing, without excuse, to respond to lawful requests for documents and information from the court itself, and from a disciplinary agency of the court during a disciplinary investigation duly ordered by the court with notice to Bailey. *See In re Bailey*, 11 Vet.App. 267 (Vet.App.1998). The appeal was submitted for our decision, on the briefs, on February 2, 1999. We hold we have jurisdiction to review the order, but only insofar as its constitutionality is challenged.[2] Because we also hold, contrary to Bailey's contentions, that his Due Process rights, under the Fifth Amendment to the United States Constitution, to reasonable notice and an opportunity to be heard were not violated during the proceedings leading to the order, we affirm the Court of Appeals for Veterans Claims's disciplinary order. As to Bailey's non-constitutional contentions, the appeal is dismissed for lack of jurisdiction.

The Court of Appeals for Veterans Claims and its Committee on Admission and Practice (the "Committee"), a disciplinary agency of the court, provided Bailey with multiple written notices of the alleged misconduct and the proposed discipline, an opportunity to respond to each notice, of which he took full advantage each time, and a telephonic evidentiary hearing, to which he made no objection, and in which he testified. Subsequently, the court reviewed the transcript of the hearing and the report of the Committee with new and full briefing by Bailey. Following an independent review of the record, the court accepted the Committee's recommendation of a public reprimand, but rejected the recommendation of a two-year suspension from practice before the court, declining to order any period of suspension. Under these circumstances, we hold that Bailey received all the process due to an attorney in a disciplinary proceeding before a court of law respecting the right to continue to practice before such court.

## BACKGROUND

On April 24, 1994, the Court of Appeals for Veterans Claims permitted attorney Bailey to appear *pro hac vice* before it as counsel for Joseph Odrosky, after Odrosky's appeal, *Odrosky v. Brown*, No. 94–193, was assigned to Bailey through the Veterans Consortium Pro Bono Program

---

1. On March 1, 1999 the name of the United States Court of Veterans Appeals was changed to the United States Court of Appeals for Veterans Claims pursuant to enactment of the Veterans Programs Enhancement Act of 1998, Pub.L. No. 105–368, § 511, 112 Stat. 3315, 3341 (1998). We refer throughout this opinion to the court by its new name even though at the time of the proceedings and order here reviewed, it was not yet so named.

R. Greg Bailey was permitted by the Court of Appeals for Veterans Claims to appear *pro hac vice*.

2. The Department of Justice submitted a brief limited to the jurisdictional issue, taking no position on the merits, urging us to find that we do have jurisdiction over this appeal.

(the "Consortium"). On June 2, 1995, more than a year later, the court dismissed the veteran's appeal because Bailey still had not filed a long-overdue brief, or otherwise prosecuted the appeal, despite both general and specific orders to him from the court to do so. Prior to the eventual dismissal, Bailey failed even to contact Odrosky, and he only indirectly communicated with him thereafter, through a telephone call made by Bailey's father, a non-attorney.

On June 28, 1995, the court reinstated Odrosky's appeal pursuant to a memorandum submitted by the Consortium and, in connection with Bailey's request to withdraw as counsel, it ordered Bailey to provide specific documents and information relating to his apparent failure to prosecute the veteran's appeal. Bailey filed a late response to the order, stating only why, in his view, he could not properly have complied with one item in the order. He either declined to respond, due to his belief that the court's order was unlawful and unethical, or ignored each of the other four items that he had been requested to produce by the order. Thereafter, the court ordered Bailey to show cause why this matter should not be referred to its Committee, requesting limited and specific information related only to his conduct of the veteran's appeal.[3] Bailey filed a timely response in which he stated that he did not believe he should be required to provide the information and documents referenced in the court's June 28, 1995 order.

Considering the foregoing, on December 1, 1995, the court referred the disciplinary issue to its Committee for review of Bailey's prosecution of the veteran's appeal. In connection with its review, the Committee communicated by letter with both the Consortium and with Bailey. Following such communications and its preliminary investigation, the Committee, in a letter dated April 5, 1996, advised Bailey of its *preliminary* view that the available evidence supported the conclusion that he had committed misconduct as described in the American Bar Association ("A.B.A.") Model Rules of Professional Conduct 1.3 and 8.1, made applicable to him by Rule 1(b) of the Court of Appeals for Veterans Claims's Rules of Admission and Practice. The Committee further advised Bailey that he had thirty days after the mailing date of its letter to respond to the Committee's preliminary conclusion. Bailey filed a timely response on May 3, 1996. After considering Bailey's response, the Committee concluded that a hearing was unnecessary, because the material facts were undisputed and Bailey had been given repeated opportunities, both by the court and the Committee, to present all relevant facts and any explanation or excuse concerning his handling of the veteran's appeal and had in fact done so.

On July 18, 1996, the Committee filed a report with the court detailing its findings and recommending that Bailey's privilege of practicing before the court be suspended for a period of two years and that the court's disciplinary action be reported to the other bars of which Bailey was a member. In a submission to the court, Bailey objected to this report, asserting a violation of his Due Process rights by the Committee, due to its failure to conduct a live evidentiary hearing. The court thereupon referred the matter back to the Committee and ordered it to conduct such a hearing. In addition, the court directed the Committee to provide Bailey with advance notice of any evidence on which it intended to rely, and to afford Bailey the opportunity to respond, both in writing and at a hearing, to any and all of this evidence, as well as to provide any new and pertinent evidence of his own. On February 27, 1998, after conducting a telephonic hearing with Bailey, to which Bailey did not object, and considering additional information and evi-

---

**3.** On October 6, 1995, the court granted Bailey's motion to withdraw as counsel in *Odro-* *sky.*

dence provided by Bailey, the Committee filed a supplemental and final report with the court confirming its earlier recommendation.

On March 30, 1998, the court ordered Bailey to show cause why it should not impose the recommended discipline. Bailey timely replied on April 30, 1998. Thereafter, on June 11, 1998, the court ordered that Bailey be publicly reprimanded by published order for his lack of diligence in prosecuting the veteran's appeal and for his inexcusable failure to respond to lawful requests for documents and information from both the court and the Committee. Despite the Committee's recommendation, however, no suspension was ordered by the court.

Bailey appeals, contending that the disciplinary proceedings, as conducted, violated his Due Process rights and that his prosecution of the veteran's appeal fell short of adequate grounds for imposing any discipline, even a reprimand without suspension. Because Bailey filed this appeal within thirty days of the disciplinary order, the appeal to this court is timely. Whether we have jurisdiction, however, is less clear.

## DISCUSSION

### I.

Before considering the merits, we must first determine whether it is within this court's subject-matter jurisdiction to review any of the issues presented by Bailey in this appeal. *See Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 273 (Fed. Cir.1985) (noting that, whether or not the issue is raised by a party, a court must always satisfy itself that jurisdiction exists). Bailey contends that the attorney disciplinary proceedings, as conducted, violated his Due Process rights and that his prosecution of the veteran's appeal fell short of adequate grounds for imposing any discipline. Regarding the constitutional issue—Due Process—we hold that we may exercise jurisdiction. As to Bailey's challenge to the factual sufficiency of the evidence supporting the disciplinary order, we hold that we do not have jurisdiction.

### A.

Although we have never addressed the underlying issue of the authority of the Court of Appeals for Veterans Claims to discipline attorneys practicing before it, we have no doubt that the Court of Appeals for Veterans Claims does indeed have such power.[4] The United States Supreme Court and federal courts of appeals have repeatedly recognized that regulation of attorney behavior is an inherent power of any court of law and falls within the discretion of such court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("[A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it."); *In re Jacobs*, 44 F.3d

4. That the Court of Appeals for Veterans Claims was created under Article I rather than under Article III is no impediment to our concluding that it has inherent power to discipline attorneys practicing before it. Indeed, as the Supreme Court noted in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the rationale for recognizing in courts created under Article III an inherent power to discipline attorneys practicing before them rests on two basic principles—the need to control proceedings before such court and the need to protect the exercise of judicial authority in connection with those proceedings. These principles are equally applicable to the Court of Appeals for Veterans Claims. Although not exercising "judicial" power in the Article III sense, it is still a court of law. Like an Article III court, the Court of Appeals for Veterans Claims has a need to control court proceedings before it and a need to protect the exercise of its authority in connection with those proceedings. Therefore, like an Article III court, the Court of Appeals for Veterans Claims must have inherent power to discipline attorneys practicing before it. We note, however, that this inherent power cannot carry with it the authority to exercise such power outside the bounds of constitutionally-mandated Due Process. *See id.* at 44, 111 S.Ct. 2123.

84, 87 (2d Cir.1994) (holding that a district court's authority to discipline attorneys admitted to appear before it is an inherent power of the court); *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir.1993) ("Courts are endowed with inherent powers which are necessary to the conduct of their business, including the power to sanction."); *Cunningham v. Sears, Roebuck and Co.*, 854 F.2d 914, 916 (6th Cir. 1988) (holding that it is an inherent power of the court to impose sanctions upon counsel who have acted in bad faith). Accepting that the Court of Appeals for Veterans Claims has this inherent power, we must still determine whether it is within *this* court's jurisdiction to review any of the issues presented by Bailey in this appeal.

### B.

██ Bailey presents a constitutional issue on appeal that does not include a challenge to the validity of a statute or regulation or interpretation thereof. We have never expressly decided in clear and explicit terms whether this court has jurisdiction to review such a "free-standing" constitutional issue, i.e., one not also involving a challenge to the interpretation or validity of a statute or regulation. Now we do. We hold that we do have such subject-matter jurisdiction.

The Federal Circuit's jurisdiction over decisions of the Court of Appeals for Veterans Claims is governed by a section of a 1988 statute codified at 38 U.S.C. § 7292 (1994), *as amended by* the Veterans Programs Enhancement Act of 1998, Pub.L. No. 105–368, § 511, 112 Stat. 3315, 3341 (1998). Section 7292, entitled Review by United States Court of Appeals for the Federal Circuit, provides in pertinent part:

  (a) After a decision of the United States Court of Appeals for Veterans Claims is entered in a case, any party to the case may obtain a review of the decision with respect to the *validity of any statute or regulation . . . or any interpretation thereof* (other than a determination as to

a factual matter) that was relied on by the Court in making the decision. . . .

\*     \*     \*

  (c) The United States Court of Appeals for the *Federal Circuit shall have exclusive jurisdiction* to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, *and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision. . . .*

  (d)(1) The Court of Appeals for the *Federal Circuit shall decide all relevant questions of law, including interpreting constitutional and statutory provisions.* The court shall hold unlawful and set aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon in the decision of the Court of Appeals for Veterans Claims that the Court of Appeals for the Federal Circuit finds to be—

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (B) contrary to constitutional right, power, privilege, or immunity;

    (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or

    (D) without observance of procedure required by law.

  (2) Except to the extent that *an appeal* under this chapter *presents a constitutional issue,* the Court of Appeals may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case.

(emphasis added). As evidenced by their explicit language, subsections (a), (c) and (d) each contain certain specifics as to the scope of the grant of jurisdiction. Indeed, no one subsection alone defines our jurisdiction, but rather all of them must be

reviewed, and must be read together. Subsection (a) provides that "any" party to a case before the Court of Appeals for Veterans Claims may obtain review of the court's decision "with respect to the validity of any statute or regulation . . . or any interpretation thereof . . . that was relied on by the Court in making the decision." The scope of our jurisdiction is not expressed solely in subsection (a), however, because subsection (a) appears to deal primarily with standing ("any party . . . may obtain review"), whereas subsection (c) expressly states our jurisdiction ("the Federal Circuit shall have exclusive jurisdiction"), and subsection (d) further defines it ("[the court] shall decide all relevant questions of law, including interpreting constitutional . . . provisions"). Subsection (c) expressly grants this court not only "exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof," but also "exclusive jurisdiction . . . to interpret constitutional . . . provisions, to the extent presented and necessary to a decision. . . ." Indeed, subsection (c) states that this court "shall have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof . . . *and* to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." (emphasis added). The presence of the "and" within this subsection supports the view that our "exclusive jurisdiction" includes, not only review of challenges to statutes or regulations and interpretations thereof, but also interpreting constitutional provisions, at least to the "extent presented and necessary to a decision." Otherwise, the language "and" would have been followed by something like ", insofar as relevant to such challenge," thus limiting our constitutional decision-making to issues in which the constitutional provision was merely an aspect of a challenge to a statute or regulation as interpreted. But *no such limiting* language was included.

Similarly, subsection (d)(1) expressly confers jurisdiction to decide "all relevant questions of law, including interpreting constitutional . . . provisions." Indeed, this provision states that the Federal Circuit "shall decide" such questions. The only limitation on the obligation to decide questions of constitutional interpretation is that they be "relevant." By comparison, subsection (c) contains the stated limitation that questions of constitutional interpretation be decided only "to the extent presented and necessary to a decision." We regard these express limitations to our "constitutional jurisdiction" as functionally identical. None of these limitations applies here, for the constitutional question here most surely is "presented," is "necessary to a decision," and is "relevant." Finally, subsection (d)(2) contains language regarding the scope of our authority to decide "a constitutional issue." Subsection (d)(2) builds on subsections (a) and (c) and (d)(1), by impliedly allowing fact review in respect of "an appeal . . . that presents a constitutional issue," while expressly precluding fact review respecting statutory and regulatory issues. It would be superfluous for Congress to impliedly allow such fact review if our constitutional jurisdiction were solely limited to challenges to the validity or interpretation of a statute or regulation. Accordingly, subsection (d)(2) further enlarges our constitutional jurisdiction.

■ An appeal from a disciplinary proceeding of the Court of Appeals for Veterans Claims asserting a violation of the appellant's Due Process rights necessarily "presents" a question as to "interpreting [a] constitutional provision[ ]." The precise question of constitutional interpretation presented here is, of course, how the notice and hearing requirements of the Due Process Clause of the Fifth Amendment should be interpreted respecting one subject to attorney disciplinary proceedings by a court of law, as opposed to other types of proceedings or official acts. But our jurisdiction covers more than just this

one clause of this one amendment. We therefore hold that, even in the absence of a challenge to the validity or interpretation of a statute or regulation, "to the extent" that an appeal from a final decision on attorney disciplinary matters "presents a constitutional issue," i.e., requires us "to interpret constitutional ... provisions," no matter what amendment or clause thereof in which they are found, this court has jurisdiction.

Our holding today of jurisdiction over "free-standing" constitutional issues is in no way inconsistent with the evident intent of Congress as seen in the review powers expressly granted this court over decisions of the Court of Appeals for Veterans Claims. It would be illogical to conclude that Congress granted this court jurisdiction to determine the validity of statutes or regulations, including their constitutionality, but withheld jurisdiction over constitutional issues not tied to the validity of a statute or regulation. Such a reading of section 7292 also comports with the broad implications of the Constitution itself. Thus, federal courts have a duty to uphold the Constitution, as the Constitution is the supreme law of the land. U.S. Const. Art. VI, § 2; *see also Testa v. Katt*, 330 U.S. 386, 391, 67 S.Ct. 810, 91 L.Ed. 967 (1947) ("[T]he Constitution and the laws passed pursuant to it are the supreme laws of the land, binding alike upon states, courts, and the people.") In accordance with our inherent duty as shown in our oaths of office to uphold the Constitution, we conclude that Congress expressly granted this court, in subsections (c) and (d), jurisdiction to address constitutional issues that are presented to this court, even in the absence of a challenge to the validity of a statute or regulation or interpretation thereof.

Our holding today is also supported by considerable precedent. We have stated in prior appeals relating to veterans' benefits that this court has jurisdiction over an appeal to the extent that it presents a constitutional issue. *See Madden v. Gob-*er, 125 F.3d 1477, 1480 (Fed.Cir.1997) ("Congress has provided that our authority to review the decisions of the [Court of Appeals for Veterans Claims] is restricted to entertaining appeals that seek review of the validity of any statute or regulation, or any interpretations thereof, *or* that raise constitutional controversies.") (emphasis added); *Albun v. Brown*, 9 F.3d 1528, 1530 (Fed.Cir.1993) (stating that this court has jurisdiction to review an appeal *insofar as such appeal presents a constitutional issue*) (emphasis added). In *Helfer v. West*, 174 F.3d 1332, 1335 (Fed.Cir.1999), this court held that it could and would exercise jurisdiction over Helfer's appeal to the extent that his constitutional claim was not "constitutional in name only." Helfer presented three claims, only two of which we held we had jurisdiction to consider. We stated:

> Cognizant of our narrow jurisdictional mandate, Mr. Helfer has, in the main, presented his case as a constitutional challenge *and* a request for an interpretation of a statutory provision. To the extent that he contends, apart from his constitutional claim *and* his statutory construction arguments, that the [Court of Appeals for Veterans Claims] erred in holding that the government's position in the litigation before the [Court of Appeals for Veterans Claims] was substantially justified, we lack jurisdiction to address that question. We therefore confine ourselves to the constitutional question *and* the question of statutory interpretation to which Mr. Helfer devotes most of his attention.

*Id.* (emphasis added) (citations omitted). The two claims over which we held we had jurisdiction did not both include a challenge to a statutory interpretation. Rather, the first claim involved only a constitutional challenge, while the second claim involved an interpretation of the Equal Access to Justice Act (the "EAJA"), 5 U.S.C. § 504.

As to Helfer's second claim, Helfer maintained that the Court of Appeals for

Veterans Claims "misinterpreted [the] EAJA." *Id.* at 1336–1337. This challenge plainly involved a challenge to an interpretation of a statutory provision. We therefore held that we had "jurisdiction to consider this argument ... because [it] constitute[s a] challenge[ ] to the interpretation of a statute, not simply [a] challenge[ ] 'to a law or regulation as applied to the facts of a particular case.'" *Id.*

As to Helfer's first claim, which did not involve a challenge to an interpretation of the EAJA, Helfer contended that, "by ruling against him as it did, the [Court of Appeals for Veterans Claims] deprived him of a property interest without [D]ue [P]rocess of law." *Id.* at 1335. According to Helfer, his case fell within the scope of a judge-made rule of the Court of Appeals for Veterans Claims, and thus when the court failed to apply that judge-made rule to his case, it denied him Due Process. *Id.* at 1335–1336. Helfer's first claim therefore did not challenge an interpretation of the EAJA relied upon by the court in making its decision. We explained Helfer's constitutional argument as follows:

> Mr. Helfer argues that the [Court of Appeals for Veterans Claims] has adopted a legal rule that when the Secretary does not alter his litigating position despite an intervening change in the law that renders his position untenable, the Secretary's position cannot be substantially justified. According to Mr. Helfer, this case falls within the scope of that legal rule and when the [Court of Appeals for Veterans Claims] failed to *apply* that rule to his case and failed to explain why it was not doing so, it denied him [D]ue [P]rocess.

*Id.* (emphasis added). In other words, Helfer contended that his Due Process rights were violated because the court failed to *apply* a judge-made rule to him and failed to explain why it did not *apply* that rule. Although the judge-made rule is based on an interpretation of the EAJA,

e.g., what it means for the Secretary of Veterans' Affairs' position to be "substantially justified," Helfer did not challenge that interpretation. Instead, Helfer supported that interpretation, arguing that the court erred in not *applying* this interpretation to his case. Hence, Helfer's first claim is properly understood as presenting a "free-standing" constitutional issue—did the lower court violate Helfer's Due Process rights by failing to *apply* the judge-made rule and by failing to explain why it did not *apply* the rule to his case. Although the dissent suggests that the constitutional issue there involved an interpretation of the EAJA, we believe it involves merely an interpretation of the Due Process Clause itself. At the very least, it clearly did not involve a "challenge" to that interpretation, which Helfer actually supported.

In determining our jurisdiction over Helfer's "free-standing" constitutional claim, we considered subsections (a) and (c), stating:

> Under 38 U.S.C. § 7292(a), a party to a case before the Court of Appeals for Veterans Claims may obtain a review of the court's decision "with respect to the validity of any statute or regulation ... or any interpretation thereof ... that was relied on by the Court in making the decision." *Consistent with* subsection (a) of the statute, subsection (c) gives us "exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, *and to interpret constitutional* and statutory *provisions*, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c).

*Id.* (emphasis added). Although we did not explain what we meant by the phrase "[c]onsistent with," certainly we could hardly have meant "as limited by" or "only subject to" or "solely to the extent allowed by" subsection (a).[5] In effect, we

---

5. We note that subsection (c) is "[c]onsistent with" subsection (a) to the extent that subsec-

held that our jurisdiction is not defined as to its outer limits solely by subsection (a), but rather that subsections (c) and (d), together, clarify subsection (a) and more specifically and fully define our jurisdiction. Indeed, we further stated, relying on subsection (d) that:

> Our jurisdictional statute, 38 U.S.C. § 7292, authorizes us to decide "all relevant questions of law," but provides that *except to the extent that an appeal presents a constitutional issue*, we may not review "(A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d).

*Id.* at 1334–1335 (emphasis added). Pursuant to such jurisdictional authority, we concluded "[a]lthough we have jurisdiction to consider Mr. Helfer's constitutional claim, we conclude that it is without merit." *Id.* at 1335–1336. We therefore had to have held that, pursuant to our express jurisdictional authority, this court has jurisdiction over a "free-standing" constitutional issue, i.e., one that was separate and distinct from any challenge to an interpretation of the EAJA. Thus, by necessary implication, we held that our jurisdiction over the Court of Appeals for Veterans Claims arises independently from subsections (a) *and* (c) *and* (d). Accordingly, in *Helfer*, we necessarily held that this court may exercise jurisdiction over an appeal that presents a "free-standing" constitutional issue insofar as such a constitutional challenge is not merely constitutional in name only, provided it is relevant, necessary, and presented. *Id.* at 1335. Therefore, we believe that, properly understood, *Helfer* supports, if it does not actually compel, our holding here.

We can imagine only one construction of section 7292 that would yield the opposite conclusion. It is that the phrase "necessary to a decision" refers only to a decision about the interpretation or validity of statutes or regulations relied on by the Court of Appeals for Veterans Claims. Such a reading, we think, would be too narrow. It would also be contrary to the apparent intent of Congress. If Congress wanted this court to overturn decisions of the court below that were based on misinterpretations of mere regulations, it is unlikely that at the same time Congress intended to immunize from review and reversal decisions based upon misinterpretations of the Constitution. Finally, such a construction of our jurisdictional statute would attribute to Congress an intention that we construe the statute, particularly the word "decision," in a narrow and, in fact, hypertechnical manner, contrary to constitutional primacy and common sense. While it is true that Congress limited the scope of our review to exclude review of factual determinations, plenary review otherwise seems to have been authorized, especially of questions of law. Indeed, Congress expressly mentioned "constitutional questions" as a subcategory of the "questions of law" for which it seemed to mandate review in the clearest possible terms. Accordingly, we must reject the only interpretation of the relevant statutory language that could compel a conclusion of no jurisdiction over such a "free standing" constitutional issue.

█ Consistent with our express statutory grant of jurisdiction in 38 U.S.C. § 7292, read in light of our holding in *Helfer* and of the Constitution itself, we therefore hold that this court has jurisdiction over any "free-standing" constitutional issue, i.e., one not also involving a challenge to the interpretation or validity of a statute or regulation, so long as it other-

tion (c) grants this court jurisdiction over the same issues as those set forth in subsection (a), i.e., review of the validity of a statute or regulation or any interpretation thereof. But our jurisdiction is not limited to review of the validity of a statute or regulation or interpretation thereof, because, in our view, subsec-

tions (c) and (d) separately grant this court additional jurisdiction to "interpret constitutional ... provisions." Otherwise, we would have had to find *no* jurisdiction over the very constitutional issue presented by Helfer in his appeal.

wise meets the limitations of the jurisdictional statute.

C.

Bailey's appeal raises two distinct issues: (1) whether the disciplinary proceedings, as conducted, violated his Due Process rights, and (2) whether his prosecution of the veteran's appeal provided adequate grounds for any discipline. One issue that Bailey raises—Due Process – we hold is within our jurisdiction, while the other—factual sufficiency—is not. With regard to the first issue—whether Bailey's Due Process rights were violated—Bailey indeed presents a constitutional issue that requires us to interpret a constitutional provision, namely the Fifth Amendment's Due Process Clause. Bailey's constitutional claim is not merely constitutional in name only. Indeed, Bailey contends that he was given neither sufficient notice nor an adequate opportunity to be heard in the process leading up to the submission of the Committee's final report, and thus challenges more than the justification for the holding of the Court of Appeals for Veterans Claims. As subsections 7292(c) and (d) expressly grant this court jurisdiction in such circumstance over such an issue, we may consider and decide it on appeal. Indeed, we must ("shall") and so will.

■ Further, we may consider the first issue Bailey raises—Due Process—even as to factual matters. Subsection 7292(d)(2) provides that *"[e]xcept to the extent that an appeal ... presents a constitutional issue,* [the Court of Appeals for the Federal Circuit] may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to *the facts of a particular case"* (emphasis added). Since the first issue Bailey raises "presents a constitutional issue," subsection 7292(d)(2), by negative implication, does authorize this court to review it as to factual matters. Akin to the structure of subsection 7292(c), (d)(1) already conferred jurisdiction over "questions of law, includ-

ing interpreting constitutional ... provisions," so, logically, the grant in (d)(2) must be separate and distinct. It also represents the only instance in which we may review factual matters in an appeal from the Court of Appeals for Veterans Claims. We hesitate to impute illogic to Congress, especially in a statute so detailed and explicit.

■ As to the second issue, however, Bailey merely challenges the adequacy of the evidence to support the court's order of public reprimand. We do not have jurisdiction to review this challenge and thus do not consider it. When an appeal to this court from the Court of Appeals for Veterans Claims does not present a question as to the interpretation of a constitutional or statutory provision (of the latter's validity) or the interpretation of a statute or regulation relied upon by the Court of Appeals for Veterans Claims, this court is required to dismiss the appeal for lack of jurisdiction. *See Albun v. Brown,* 9 F.3d 1528, 1530 (Fed.Cir.1993). Here, the second issue that Bailey raises requires this court to consider the factual sufficiency of the record to support the disciplinary order. Because it is thus not within our jurisdiction, we dismiss the appeal as to such issue.

There were two disciplinary charges against Bailey: failure to obey a lawful order of the court and failure to represent his client zealously. The first of the two charges, Bailey maintains, was based on his refusal to disclose a confidential communication with a client and his failure to produce private telephone records. Bailey asserts that the order to disclose the alleged confidential communication with the client was unlawful. However, he does not assert it was unconstitutional. With respect to the second charge, Bailey contends that the record of Odrosky's claim before the Board of Veterans' Appeals, which Bailey received for the veteran's appeal to the Court of Appeals for Veterans Claims, would not support a successful

appeal and that it was, therefore, within his professional judgment not to prosecute the appeal. These factual challenges to the Court of Appeals for Veterans Claims's decision plainly do not require an interpretation of a statutory or constitutional provision or the interpretation or validity of a regulation relied upon by that court. Thus, because this court lacks jurisdiction with respect to this aspect of the appeal, we cannot and do not consider it. To the extent the appeal rests on such non-constitutional factual matters, it is likewise dismissed.

## II.

■ As to the merits of his appeal on constitutional grounds, Bailey contends that his Due Process rights were violated because he was given neither sufficient notice nor an adequate opportunity to be heard in the proceedings leading up to the submission of the Committee's final report. Bailey's contention presents a constitutional issue, and thus, as discussed above, it is reviewable by this court as to both its legal and factual aspects. Upon careful review of the record, we discern no violation of Bailey's Due Process rights. Due Process, guaranteed by the Fifth Amendment, requires specific notice and an adequate opportunity to be heard prior to governmental decisions depriving individuals of liberty or property interests. *See Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). For the purpose of this appeal, we assume an adequate property interest in the privilege of appearing before the Court of Appeals for Veterans Claims. We conclude, however, that Bailey received both specific notice and an adequate opportunity to be heard. Indeed, he was in fact heard repeatedly, both on paper and once in a telephonic hearing.

■ With respect to inadequate notice, Bailey maintains that the Committee wrongfully issued the April 5, 1996 letter to him without prior notice. We cannot agree. Due Process "is not a technical conception with a fixed content unrelated to time, place and circumstance"; rather, it "is flexible and calls for such procedural protections as the particular situation demands." *Mathews,* 424 U.S. at 334, 96 S.Ct. 893 (citations omitted). Our examination of the circumstance and the factual history of this proceeding reveals that before April 5, 1996, Bailey was well aware that the Court of Appeals for Veterans Claims was reviewing whether his prosecution of the veteran's appeal violated its rules of practice. First, the court itself had twice ordered Bailey to provide specific documents and information related to his prosecution of the veteran's appeal, thus putting him on notice of the court's dissatisfaction. Second, in connection with its subsequent review and *before* its April 5, 1996 letter, the Committee had communicated by letter with Bailey, further notifying him of the disciplinary proceedings pending against him.

■ Even if Bailey had not been given proper notice prior to the April 5, 1996 letter containing only its *preliminary* findings, this letter itself gave sufficient notice of the disciplinary proceedings. *See Gilbert v. Homar,* 520 U.S. 924, 929, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (holding that oral or written notice of charges and explanations of evidence was sufficient to satisfy Due Process). The April 5, 1996 letter advised Bailey of the Committee's preliminary view that the available evidence supported the conclusion that he had committed misconduct as described in the A.B.A. Model Rules of Professional Conduct 1.3 and 8.1, made applicable to him by Rule 1(b) of the Court of Appeals for Veterans Claims's Rules of Admission and Practice. This letter was sufficient notice because it provided Bailey with the specific legal rules on which any later discipline would be based, the precise factual grounds for such possible discipline, and the form and extent of potential discipline. More importantly, the letter advised Bailey that he had thirty days after the mailing date of the letter to respond to the Committee as

to its preliminary conclusion. Thus, contrary to Bailey's contention, this letter was not the Committee's final determination. Rather, this letter was only a preliminary determination, or notice, to which Bailey was afforded an opportunity to reply. Without such a letter advising Bailey of the Committee's preliminary view, his opportunity to be heard would have been less meaningful. Accordingly, we can only conclude Bailey was aided, rather than prejudiced, by this letter. Thus, we conclude that Bailey was provided with proper notice because, first, Bailey was fully informed of the proceedings against him prior to the issuance of the April 5, 1996 letter and, second, this letter alone provided sufficiently specific and useful notice. Accordingly, we reject Bailey's contention that his Due Process rights were violated by inadequate notice.

■ With respect to an opportunity to be heard, Bailey contends that the Committee should have afforded him a hearing prior to the submission of its first report to the court. Bailey maintains that Rules 1 and 2 of the Court of Appeals for Veterans Claims's Rules of Admission and Practice provide for a hearing on the record. Because he was not provided a hearing, Bailey asserts that his Due Process rights were, per se, violated. We conclude, however, on this record that Bailey's Due Process rights were not violated because he was given an adequate opportunity to be heard. Indeed, he was heard. Contrary to Bailey's assertion of an automatic right to a hearing, Rule 2(d)(4) of the Court of Appeals for Veterans Claims's Rules of Admission and Practice provides that the Committee need *not* conduct a hearing when it determines that one is unnecessary. In Bailey's case, the Committee decided it was unnecessary to conduct such a hearing because it determined that, based on Bailey's several responses, no material facts were in dispute and that Bailey had been given repeated opportunities, both by the court and by the Committee, to present all relevant facts and any explanation

or excuse concerning his failure to prosecute the veteran's appeal. We need not decide the merits of the Committee's decision to forego a hearing at that time, however, because such a hearing was subsequently ordered by the court and held telephonically by the Committee, thereby curing any possible defect. *See Butler v. Apfel*, 144 F.3d 622, 627 (9th Cir.1998) (holding that a telephone hearing was sufficient to satisfy Due Process). Even assuming it were error for the Committee to decide to forego a hearing before its first submission to the court, which we do not conclude, it was at most harmless error.

■ Nor does Bailey complain of the form of the hearing, that it was ultimately held by telephone and not in person. Indeed, it appears that this was convenient to him, an accommodation that saved him time and money, for he resided far from Washington, D.C., the location of the Committee. In any event, because he did not object at the time to the form of the hearing, he has waived any right to object here.

■ Bailey contends, however, that the Committee used dilatory and abusive tactics during the hearing and that it was biased by its own prior recommendation. We find both contentions utterly unpersuasive. First, Bailey cites no specific instances where the Committee used such tactics. Nor does he set forth any evidence whatsoever of bias. Indeed, upon independent examination of the record we do not find any such evidence. Rather, the Committee's recommendation seems well supported by the facts of record that are wholly undisputed.

Even if Bailey's contention regarding the Committee's conduct were true, the court, not the Committee, made the determination whether Bailey would be subject to discipline for failure to prosecute the veteran's appeal. Prior to making its decision, the court provided Bailey a further (third) opportunity to show cause to the court why it should not impose discipline.

The court reviewed the account Bailey submitted in his brief and, in fact, it thereafter reduced the sanction recommended by the Committee. Specifically, the court, while accepting the recommendation about some discipline of Bailey, rejected the recommendation of a two-year suspension. Accordingly, even assuming bias by the Committee, the court's decision was independent and, in any event, more favorable to Bailey, and thus any Committee bias seemed of no effect.

In sum, considering all the evidence in the record, particularly the undisputed facts, we cannot say that Bailey's Due Process rights were violated. We hold, on the contrary, that Bailey was given proper notice and an adequate opportunity to be heard prior to the court's June 11, 1998 disciplinary order of public reprimand. Accordingly, we must reject Bailey's contention that this disciplinary order was issued without Due Process.

## CONCLUSION

We have carefully considered Bailey's various arguments and find them wholly insufficient to show that the June 11, 1998 disciplinary order of public reprimand by the Court of Appeals for Veterans Claims was issued without Due Process. Bailey was repeatedly given specific notices and numerous opportunities to be heard, and in fact was heard, including in a telephonic hearing before the Committee and in three submissions to the court, prior to issuance by the court of its disciplinary order. The underlying factual assessments as to the grounds for issuing the disciplinary order of public reprimand are beyond our jurisdiction. As to this aspect of the appeal, it is dismissed. As to its constitutionality, the decision of the Court of Appeals for Veterans Claims to discipline Bailey by public reprimand is affirmed.

*AFFIRMED–IN–PART* and *DIS-MISSED–IN–PART.*

SCHALL, Circuit Judge, dissenting.

The court states that Bailey's appeal presents a "free-standing" constitutional issue. By that, it means a constitutional issue that does not also involve a challenge to the validity or interpretation of a statute or regulation. I agree with the court's characterization of Bailey's claim. However, I am unable to agree with the court's conclusion that we have jurisdiction to adjudicate the claim. Accordingly, I respectfully dissent.

Our jurisdiction over appeals from the United States Court of Appeals for Veterans Claims is governed by 38 U.S.C. § 7292. That section, which is titled "Review by United States Court of Appeals for the Federal Circuit," provides in pertinent part as follows:

(a) After a decision of the United States Court of Appeals for Veterans Claims is entered in a case, any party to the case may obtain a review of the decision with respect to the validity of any statute or regulation ... or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision....

\* \* \*

(c) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision....

(d)(1) The Court of Appeals for the Federal Circuit shall decide all relevant questions of law, including interpreting constitutional and statutory provisions. The court shall hold unlawful and set aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon in the decision of the Court of Appeals for Veterans Claims that the

Court of Appeals for the Federal Circuit finds to be

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or without observance of procedure required by law.

(2) Except to the extent that an appeal under this chapter presents a constitutional issue, the Court of Appeals may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case.

The court states that subsections (a), (c), and (d) each contain a grant of jurisdiction, that no one subsection alone defines our jurisdiction, and that all three subsections must be read together. Starting from that premise, the court reads subsection (a) as dealing primarily with standing and subsections (c) and (d) as stating and defining our jurisdiction. Noting that federal courts are vested with the duty to uphold the Constitution, the court concludes that, in subsections (c) and (d), Congress granted us authority to consider constitutional issues that are raised in an appeal from the Court of Appeals for Veterans Claims, even if the appeal does not involve a challenge to the validity or interpretation of a statute or regulation. I agree with the court that the provisions of subsections (a), (c), and (d) must be read together. However, I do not agree with the conclusion that the court draws from such a reading.

In my view, a reading of subsections (a), (c), and (d) compels the conclusion that we only have jurisdiction to consider a constitutional issue if it is raised as part of a challenge to the validity of a statute or regulation or as part of a challenge to the interpretation of a statute or regulation. In other words, we lack jurisdiction to consider the kind of "free-standing" constitutional claim that Bailey raises in this appeal.

I believe that subsection (a) frames our jurisdiction, for it is the part of section 7292 that gives a party the right to appeal to us a decision of the Court of Appeals for Veterans Claims. The right that the provision gives is limited. A party may only obtain a review of the decision "with respect to the validity of any statute or regulation ... or any interpretation thereof" that was relied on by the court in making its decision. In other words, a party is only given the right to appeal a limited aspect of the court's decision. Thus, I do not share the court's view that subsection (a) is mainly a standing provision.

Significantly, in subsection (c), we are given review authority that is expressly tied to the kind of appeal that subsection (a) permits. We are told that we have jurisdiction "to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof *brought under this section,* and to interpret constitutional and statutory provisions to the extent presented and necessary to a decision." (emphasis added) Of course "this section" refers to section 7292. Considering the reference to "this section," I believe that the only correct reading of subsection (c) is that our review authority does not extend beyond the appeal boundaries that are staked out in subsection (a).

The court relies upon the part of subsection (c), just quoted, that give us authority to interpret constitutional and statutory provisions, the part of subsection (d)(1) that states we "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions," and the part of subsection (d)(2) that states we may review a challenge to a factual determination or a challenge to a law or regulation as applied to the facts of a particular case only if a constitutional issue is presented as providing additional grants of jurisdiction. I am unable to

agree. I do not believe that the language of the statute supports such a reading. To me, the better reading is that the provisions of subsections (c) and (d) upon which the court relies simply serve to explain the parameters of the basic jurisdictional grant that is set forth in subsection (a) and in the first part of subsection (c).

I also believe that such a reading is more consistent with pertinent rules of statutory interpretation. A statute is to be read in its entirety in a manner that yields a logical and sensible result and does not render a part of the statute superfluous. *See Ratzlaf v. United States,* 510 U.S. 135, 140, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994); *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982); *Vectra Fitness, Inc. v. TNWK Corp.,* 162 F.3d 1379, 1384–85 (Fed.Cir.1998). It does not seem logical to me that Congress would create a very limited right of appeal to this court in subsection (a) and then, in a somewhat surreptitious manner, expand that right in subsections (c) and (d). Moreover, reading the statute as doing so renders subsection (a) superfluous because, under such a reading, the jurisdictional grant contained in subsection (a) appears again in subsection (c). Finally, I believe that the court's reading of section 7292 is at odds with the proposition that a grant of a right to appeal is to be strictly construed and not expanded beyond its express terms. *See California Coastal Comm. v. Granite Rock Co.,* 480 U.S. 572, 579, 107 S.Ct. 1419, 94 L.Ed.2d 577 (1987) ("Statutes authorizing appeals are to be strictly construed."); *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 247, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984).

The court states that its holding is supported by precedent. Again, I must disagree. The cases which the court cites, *Helfer v. West,* 174 F.3d at 1335 (Fed.Cir. 1999), *Madden v. Gober,* 125 F.3d 1477 (Fed.Cir.1997), and *Albun v. Brown,* 9 F.3d 1528 (Fed.Cir.1993), do not support the proposition that we have jurisdiction to consider the kind of "free-standing" constitutional claim that is raised by Bailey. As far as the two latter cases are concerned, although *Madden* and *Albun* both state that we have authority to review constitutional issues, *see* 125 F.3d at 1480, and 9 F.3d at 1530, respectively, each case simply makes the assertion in the context of a general statement relating to jurisdiction. Neither case involved the issue that is before the court in this case-whether we have jurisdiction to consider a "free-standing" constitutional claim.

Neither does *Helfer,* upon which the court mainly relies, support the conclusion that we have jurisdiction in this case. *Helfer* in fact recognizes that our authority under subsection (c) of section 7292 is framed by the right-to-appeal language of subsection (a) of the statute. This is evident by the statement, "Consistent with subsection (a) of the statute, subsection (c) gives us 'exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision.'" *Helfer,* 174 F.3d at 1335–1336. Moreover, in *Helfer,* the constitutional claim was raised in the setting of a challenge to the Court of Appeals for Veterans Claims' interpretation of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Thus, against the backdrop of Helfer's argument that, under the terms of EAJA, he had a constitutionally protected interest in his request for attorney fees and expenses, we stated, "Mr. Helfer's constitutional argument is that by ruling against him as it did, the Court of Veterans Appeals deprived him of a property interest without due process of law." *Id.* at 1335. We explained Helfer's constitutional argument as follows:

> Mr. Helfer argues that the Court of Veterans Appeals has adopted a legal rule that when the Secretary does not alter his litigating position despite an intervening change in the law that ren-

ders his position untenable, the Secretary's position cannot be substantially justified. According to Mr. Helfer, this case falls within the scope of that legal rule, and when the Court of Veterans Appeals failed to apply that rule to his case and failed to explain why it was not doing so, it denied him due process. *Id.* at 1335–1336. In other words, Helfer argued that the Court of Appeals for Veterans Claims interpreted EAJA in a manner that denied him due process. Thus, *Helfer* did not involve a "free-standing" constitutional claim as is presented in this case. Rather, it involved a constitutional claim that arose as part of a challenge to the interpretation of a statute, in that case EAJA.

For the foregoing reasons, I do not believe that we have authority to consider Bailey's claim that the Court of Appeals for Veterans Claims deprived him of his constitutional right to due process in the course of the disciplinary proceedings that resulted in his public reprimand. Accordingly, I would dismiss the appeal for lack of jurisdiction.