**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Pryor BOLTON and Glenn McCullah,**
**d/b/a Pryor & Glenn Coal Company,**
**Defendants-Appellants.**

No. 84-5891.

United States Court of Appeals,
Sixth Circuit.

Decided Nov. 27, 1985.

Before MARTIN, JONES and WELL-FORD, Circuit Judges.

PER CURIAM.

Defendants Pryor Bolton and Glenn McCullah, d/b/a Pryor and Glenn Coal Company (P & G Coal), appeal from a final judgment entered in favor of the United States for $199,800 plus interest in this action for the collection of civil penalties assessed against defendants pursuant to 30 U.S.C. § 1268(d), a part of the Surface Mining Control and Reclamation Act of 1977 (Act).

The district court, after granting partial summary judgment to the United States on the various issues of law before the court, set for trial the factual issue of whether defendants had received notice of asserted violations and cessation orders.

This case involves civil penalties assessed against Bolton and McCullah for violations of the Act, based on two notices of violation (or "NOVs") and three cessation orders (or "COs: ) issued by the Office of Surface Mining (OSM) of the Department of the Interior in 1979 and 1980. On July 22, 1980, a civil action was filed against defendants under Section 521(c) of the Act, 30 U.S.C. § 1271(c), to compel their compliance with the five prior notices and orders involved in this case. On November 1, 1983, the district court ordered the defendants to perform certain remedial work at the mine site in question and entered an injunction against future surface coal mining operations not in compliance with the Act.[1]

Proposed assessments of civil penalties for these citations were sent to defendants in 1979 and 1980. Defendants did not take an administrative appeal from the proposed assessments and so OSM issued final orders requiring payment of the amount in controversy. Defendants did not pay the

David A. Burkhalter, II, Knoxville, Tenn., for defendants-appellants.

Robert S. More, U.S. Dept. of Interior, John W. Gill, U.S. Atty., Knoxville, Tenn., Albert M. Ferlo, Jr., David C. Shilton, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., Claire L. McGuire, for plaintiff-appellee.

1. The complaint in this prior action, as well as defendant's answer and the district court's order, set out the facts surrounding the attempts at service of the five notices of violation and cessation orders on defendants. Defendants' answer does *not* raise any objection with respect to the government's means of service. Because this prior action was for an injunction, the government did not articulate in its complaint the facts surrounding the attempted service of the notices of proposed assessment, some of which were served prior to that action's commencement.

penalties and, on January 3, 1984, OSM filed this collection action, which is the subject of this appeal.

Defendants raise several legal challenges to the collection action, specifically challenging the constitutionality of the service of the citations in question by certified mail. In its order of May 24, 1984, the district court found that notice by certified mail, as provided by 30 C.F.R. §§ 722.14(a) and 723.17(b) (1984), was constitutionally adequate. Determining that "[i]t is reasonable to assume that if persons refuse to accept delivery or collect their mail, the mail has in fact reached them," the court upheld the provisions of the regulations which find adequate service where there is refusal to accept delivery. The court rejected defendants' argument that OSM's delay in assessing penalties estopped the United States from filing a collection action against them, relying on *United States v. Log Mountain Mining Co.*, 550 F.Supp. 811 (E.D.Tenn.1982), *aff'd without opinion sub nom. United States v. Moore*, 734 F.2d 17 (6th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 247, 83 L.Ed.2d 184. The trial court also found defendants' equal protection argument meritless. Reserved for trial was the question whether defendants received sufficient notice of the five citations upon which the assessments are based.

Defendants submitted a surface mining permit application to the Tennessee Division of Surface Mining under the P & G Coal name as a partnership. Because the initial application was incomplete, the application was merely stamped "received" by the state office on September 21, 1979. Each defendant's home address was given in the application, Bolton's address being given as P & G Coal's address.

Even before the complete application was submitted, defendants had commenced mining operations contrary to law. A state inspection report dated October 4, 1979, indicates that mining activity was in progress as early as September 5, 1979. A cease order was issued by state inspectors on September 25, 1979.

On October 10, 1979, representatives of the Secretary of the Interior inspected P & G Coal's operation in response to the state inspection report and cease order. At the conclusion of their inspection, the Secretary's representatives issued the first Cessation Order for mining without a permit and the first Notice of Violation for several performance standard violations. Copies of both documents were tendered to Bolton at the mine site, but he refused to accept them. Copies of the documents were also sent by certified mail to P & G Coal at its address given in its permit application. They were returned marked "refused." Copies of the documents were then sent by regular mail to the same address, and they were not returned.

On November 7, 1979, the OSM Assessment Office sent P & G Coal notices of the proposed assessment of civil penalties for the prior violations cited in the COs and NOVs. The notices of proposed assessment were likewise sent by certified mail to the address for the company stated in the permit application and, again, refused.

Later, a helicopter overflight of the mine site showed that the operation was still in progress, in violation of the CO. The next year a follow-up inspection of the mine site revealed that the operation had been abandoned without reclamation, in violation of the applicable law. Another CO was issued for defendants' failure to abate the violations previously cited in a NOV. Another NOV was issued for defendants' failure to reclaim and restore their mine site.

Copies of the new citations were also sent by certified mail to each defendant. Bolton's were returned marked "refused," while those sent to McCullah were returned marked "unclaimed." Both sets of documents were then mailed again to each defendant by regular mail.

Notice of proposed assessment for the last NOV was sent by certified mail to P & G Coal's address, and it was returned marked "out of business."

On May 6, 1980, a second follow-up inspection revealed that the site remained

abandoned and unreclaimed. A representative of the Secretary therefore issued still another CO for defendants' failure to abate the violations cited in the previous NOV, and the described procedure was again followed. The copy sent to Bolton was returned marked "out of business," while the copy sent to McCullah was returned marked "unclaimed." Notices of proposed assessment for the latest COs were sent by certified mail to P & G Coal's address and returned as "refused."

Both a final order of penalty assessment and a final demand letter were issued in 1981 and 1982 for each of the five proposed penalty assessments. Each of the ten documents, then, was sent by certified mail to the P & G Coal address given in the permit application, and each of them was returned marked "refused."

Defendants called no witnesses at the hearing, but rather informed the court through their attorney that "Mr. Bolton ... did not specifically refuse the [Notice of Violation]. It was his practice to specifically refuse any and all certified mail regardless of the identity of the sender...." Affidavits submitted by the defendants at the request of the district court stated that Bolton and McCullah "dissolved their partnership ... in November of 1979" and that after such dissolution neither had "authority to accept notice on behalf [of the other]."

The Act provides for issuance of cessation orders and assessment of civil penalties against any permittee who violates the Act. 30 U.S.C. § 1268(a). The person charged with a violation may contest the charge in administrative and judicial proceedings by forwarding the proposed amount of the penalty to the Secretary of the Interior. 30 U.S.C. § 1268(c). Failure to forward the money to the Secretary to be placed in escrow within 30 days from notice of the proposed penalty results in

forfeiture of all legal rights to contest the violation or the amount of the penalty. *Id.*[2]

Regulations promulgated by the Secretary set forth the procedure for service of notices of violation and cessation orders and are set forth in pertinent part:

(a) A notice of violation or cessation order shall be served on the person to whom it is directed or his designated agent promptly after issuance, as follows:

(1) By tendering a copy at the surface coal mining and reclamation operation to the designated agent or to the person to whom it is directed. If no such agent is reasonably available, a copy may be tendered to the individual who, based upon reasonable inquiry by the authorized representative, appears to be in charge of the surface coal mining and reclamation operation referred to in the notice or order. If no such individual can be located at the site, a copy may be tendered to any individual at the site who appears to be an employee or agent of the person to whom the notice or order is issued. Service shall be complete upon tender of the notice or order and shall not be deemed incomplete because of refusal to accept.

(2) As an alternative to paragraph (a)(1) of this section, service may be made by sending a copy of the notice or order by certified mail or by hand to the person to whom it is issued or his designed agent. *Service shall be complete upon tender of the notice or order or of the mail and shall not be deemed incomplete because of refusal to accept.*

30 C.F.R. § 722.14(a)(1)–(2) (1985) (emphasis added). The regulations also provide for the service of notices of assessment of civil penalties in a similar manner:

(b) The Office shall serve a copy of the proposed assessment and of the worksheet showing the computation of the proposed assessment to the person to whom the notice or order was issued, by

---

2. This provision, not directly at issue here but mentioned in defendants' Brief, has withstood constitutional challenges. *See Blackhawk Mining Co. v. Andrus*, 711 F.2d 753 (6th Cir.1983);

*Graham v. Office of Surface Mining Reclamation and Enforcement*, 722 F.2d 1106 (3d Cir. 1983) (citing cases).

certified mail, within 30 days of the issuance of the notice or order. *If the mail is tendered at the address of that person set forth in the sign required under 30 CFR 715.12(b) or at any address at which that person is in fact located, and he or she refuses to accept delivery of or to collect such mail, the requirements of this paragraph shall be deemed to have been complied with upon such tender.*

30 C.F.R. § 723.17(b) (1985) (emphasis added).

The district court also noted:

Postal service regulations provide that "[c]ertified mail ... will be delivered to the addressee or his authorized representative." Domestic Mail Manual, Chapter 9, Subchapter 910, Par 912, § 912.51 (Issue 13, December 29, 1983), incorporated by reference in 39 CFR §§ 111.1–111.5 (1983) (hereinafter DMM). If for any reason, the carrier cannot deliver the certified article, he leaves a notice of arrival at the address and the article is held at the post office for the addressee. DMM § 912.55. If the article is not called for within 5 days, a second notice is issued. *Id.* If the article is not called for within 5 days, a second notice is issued. *Id.* If the article is not called for or redelivery requested, the article is returned to the sender.

■ The district court found that defendants' willful evasion was the basis of their failure to receive the notices and assessments here involved. Defendants argue, nevertheless, that, because they were unaware of the assessment of civil penalties against them, they were unable to contest them administratively within the statutory time limit. Since §§ 722.14(a) and 723.17(b) permitted this circumstance, the defendants argue that these regulations are unconstitutional as violative of due process.

Addressing the constitutionality of the regulations authorizing service of notice by certified mail and deeming such service complete where the recipient refuses to accept, the district court wrote:

... Assuming the address is correct and the addressee is not attempting to evade service, it is reasonable to assume that under most circumstances [certified] mail will reach the addressee. Thus, service of notice of the violations and penalties by certified mail is reasonably calculated under the circumstances to provide interested parties with notice, as required by due process. The provisions of the regulations which state that service of notice is not made incomplete by refusal to accept delivery or to collect mail does not render the regulations unconstitutional. It is reasonable to assume that if persons refuse to accept delivery or collect their mail, the mail has in fact reached them. *See Hoffman v. National Equipment Rental, Ltd.,* 643 F.2d 987, 990 (4th Cir. 1981). For the foregoing reasons the Court finds the regulations constitutional and grants summary judgment on the issue of law for plaintiff. However, because defendants say they never received notice of the violations and penalties, the Court believes this factual issue must be tried. If in fact defendants did not receive notice, the Court believes defendants would be entitled to contest the fact of violation and the amount of penalty at an administrative hearing, as provided by 30 U.S.C. § 1268(c).

Defendants seek to challenge this holding by reference to *Mullane v. Central Hanover Bank and Trust Company,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Greene v. Lindsey,* 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982); and *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). We find defendants' contentions unpersuasive and affirm the district court's conclusions.

In *Mullane,* the Supreme Court upheld notice by publication in some circumstances and enunciated the standard for constitutionally adequate service of process:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is *notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to*

*present their objections.* [Citations omitted.] The notice must be of such nature as reasonably to convey the required information, [citation omitted] and it must afford a reasonable time for those interested to make their appearance [citations omitted]. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals." *American Land Co. v. Zeiss,* 219 U.S. 47, 67 [31 S.Ct. 200, 207, 55 L.Ed. 82]; and see *Blinn v. Nelson,* 222 U.S. 1, 7 [32 S.Ct. 1, 2, 56 L.Ed. 65].

But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected [citations omitted], or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes. 339 U.S. at 314–15, 70 S.Ct. at 657–58 (emphasis added). *Greene* followed the strictures of *Mullane* by striking down a forcible entry or detainer statute which merely provided for service of process by posting a summons on the tenant's door.

In arriving at the constitutional assessment, we look to the realities of the case before us: In determining the constitutionality of a procedure established by the State to provide notice in a particular class of cases, "its effect must be judged in the light of its practical application to the affairs of men as they are ordinarily conducted." *North Laramie Land Co. v. Hoffman,* 268 U.S. 276, 283 [45 S.Ct. 491, 494, 69 L.Ed. 953] (1925).

456 U.S. at 451, 102 S.Ct. at 1879. The court in *Greene* also expressly approved the use of mail service in context of tenants. *See* 456 U.S. at 455, 102 S.Ct. at 1880. In *Mennonite Board of Missions,* the Court struck down a law requiring publication notice of a tax sale of real property to a known mortgagee where service by mail was possible, but in this case, as in *Mullane* and *Greene,* service by mail was approved.

None of the cases cited by defendants, moreover, contemplate a set of circumstances present here where the party raising the due process claim has earlier attempted to thwart the very notice he complains about not receiving. One case cited by the district court deals with a similar issue. In *Hoffman v. National Equipment Rental, Ltd.,* 643 F.2d 987, 990 (4th Cir.1981) when there was service of process by certified mail returned marked "refused," the court found no due process violation. We agree with that rationale.

We detect no clearly erroneous finding made by the district court, and as noted, we agree with the conclusions reached as to each defendant. It is of particular significance that defendants were parties to an action by the government for an injunction involving the five notices and orders which form the basis for the assessments on which this collection action is based. They may be presumed to be aware of the government's actions and the basis therefor apart from their willful evasion.

Defendants argue that the penalties here asserted are void because the government failed to abide by the statutory scheme, because of failure to inform them of the amount of the proposed penalty within 30 days. 30 U.S.C. § 1268(c).[3] *United States*

---

**3.** 30 U.S.C. § 1268(c) provides in pertinent part:
   *Upon the issuance of a notice or order charging that a violation of this chapter has occurred, the Secretary shall inform the operator within thirty days of the proposed amount of*

*said penalty.* The person charged with the penalty shall then have thirty days to pay the proposed penalty in full or, if the person wishes to contest either the amount of the penalty or the fact of the violation, forward

534

*v. Log Mountain Mining Co.,* 550 F.Supp. 811 (E.D.Tenn.1982), *aff'd without opinion sub nom. United States v. Moore,* 734 F.2d 17 (6th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 247, 83 L.Ed.2d 184 is dispositive on this issue, and we accordingly find no basis for defendants' contention.

■ Finally, the defendants argue that 30 U.S.C. § 1271(a)(5) operates against imposition of the penalties, citing a portion of that section:

> ... [a]ny notice or order issued pursuant to this section which requires cessation of mining by the operator shall expire within thirty days of actual notice to the operator unless a public hearing is held at the site or within such reasonable proximity to the site that any viewings of the site can be conducted during the course of public hearing.

We read this part of the statute to provide that a cessation order expires within 30 days of "actual notice." It does not require personal service as argued by defendants.

■ Defendants' estoppel and laches argument is without merit as well. The defendants do not allege what acts they undertook to their prejudice in reliance upon the government's alleged delay in prosecution. *See Sigmon Fuel Co. v. Tennessee Valley Authority,* 531 F.Supp. 80, 82 (E.D. Tenn.1982), *rev'd on other grounds,* 709 F.2d 440 (6th Cir.1983). We affirm the district court's judgment in all respects.

the proposed amount to the Secretary for placement in an escrow account.