COMMITTEE ON GRIEVANCES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK, Petitioner–Appellee,

v.

Roger Bruce FEINMAN, Respondent–Appellant.

No. 00–6900.

United States Court of Appeals, Second Circuit.

Argued Dec. 4, 2000.

Decided Feb. 8, 2001.

Roger Bruce Feinman, pro se, Briarwood, NY, for Respondent–Appellant.

Before WALKER, Chief Judge, and CABRANES, and STRAUB, Circuit Judges.

Per Curiam:

Roger Bruce Feinman appeals from a March 27, 2000 order ("the March 27 order") of the United States District Court for the Eastern District of New York (Charles P. Sifton, *Chief Judge* and Chairman of the Committee on Grievances of the United States District Court for the Eastern District of New York ("the Committee")) disbarring him from practice before that Court. The March 27 order was a "reciprocal discipline" order [1] based entirely on an order of disbarment previously entered by the United States District Court for the Southern District of New York ("the Southern District order"); the Southern District order was affirmed by this Court on July 23, 1998. *See In re Feinman,* No. 97–6064, 1998 WL 537825

1. As we have recently explained, "reciprocal discipline" is "disbarment or suspension summarily imposed [by one court] after some other court has taken such action based on a plenary inquiry." *In re Edelstein,* 214 F.3d 127, 128 (2d Cir.2000).

(2d Cir. July 23, 1998). For the reasons stated below, the March 27 order is affirmed.

On appeal, Feinman advances two colorable arguments. First, he contends that issuance of the March 27 order violated the United States Constitution because it was based on the Southern District order, which in turn was based in part on factual findings made by non-judicial officers. However, Feinman raised this argument on his prior appeal to this Court, and we reached and rejected it. *See In re Feinman*, 1998 WL 537825, at *1. Accordingly, he is barred from pressing it again here. *See, e.g., Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir.1992) (noting that collateral estoppel "bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding").

■■■ Second, Feinman argues that his disbarment in the Eastern District of New York violated the Due Process Clause of the Fifth Amendment to the United States Constitution because he was not provided with actual notice that amended disciplinary charges had been lodged against him. This argument is sheer casuistry. Feinman sent a letter to the Committee stating that he would accept no further correspondence from it. True to his word, Feinman then refused to take delivery of a Federal Express envelope conveying an amended complaint that listed the charges against him. In light of these facts, the District Court observed that Feinman's actual notice claim "borders on the frivolous." District Court Memorandum and Order at 505 (attached as Appendix). We agree, and hold that a party's constitutional right to receive actual notice of certain claims against him is not violated when he has himself intentionally and successfully thwarted service of the very notice that he claims not to have received. *See, e.g., Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1318 (10th Cir.1998) ("[I]t is well-settled that the effect of a written notice cannot be avoided by refusing service of that notice.") (collecting cases);

*Franklin v. Aycock*, 795 F.2d 1253, 1263 n. 8 (6th Cir.1986). *See also Patmon & Young Prof'l Corp. v. Comm'r*, 55 F.3d 216, 218 (6th Cir.1995) (holding that actual notice requirement for tax deficiency assessment is satisfied by a party's refusal of certified mail on the ground that "a taxpayer should not be allowed to defeat actual notice by deliberately refusing delivery of the IRS's deficiency notice"); *Erhard v. Comm'r*, 87 F.3d 273, 274–75 (9th Cir. 1996) (same). *See generally Cherry v. Heffernan*, 132 Fla. 386, 182 So. 427, 429 (1938) (stating that if a party "chooses to flout the notice and refuse to accept it, he will not be permitted to say in the next breath that he has not been served").

We have considered Feinman's remaining arguments, and conclude that they are without merit.

Accordingly, the March 27 order is AFFIRMED.

## APPENDIX

### UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

CV-96-5796(CPS)

In the Matter of Roger Bruce Feinman, Esq.,

an Attorney and Counselor-at-Law, Respondent.

### MEMORANDUM AND ORDER

This matter is before the Committee on Grievances for the Eastern District of New York (the "Committee on Grievances") to consider the imposition of reciprocal discipline against respondent pro se Roger Feinman following his disbarment by the United States District Court for the Southern District of New York. For the reasons stated below, no evidentiary hearing is required. Respondent is disbarred, and his name shall be stricken from the roll of attorneys of this Court.

### BACKGROUND

The following statement of facts is taken from the record of the underlying disci-

plinary action and from the submissions of respondent and the investigative attorney. Disputes are noted.

By order dated June 18, 1997, issued pursuant to Rule 1.5(d) of the Local Rules of the United States District for the Eastern District of New York, the Committee on Grievances designated Anthony Edward Davis, Esq. to review the allegations that led to respondent Roger Feinman's disbarment by the Southern District of New York, to advise the committee whether prosecution of a reciprocal disciplinary action was appropriate, and if so, to draft a statement of charges for service upon the respondent. Having reviewed the Southern District proceedings, Mr. Davis filed a recommendation that this Court impose reciprocal discipline upon Mr. Feinman together with a proposed statement of charges. By order dated December 3, 1998, the Committee on Grievances adopted the report and recommendation and statement of charges. Mr. Feinman was provided with a copy of the recommendation and statement of charges, to which he responded by a memorandum of law dated January 29, 1999.

### Southern District Proceedings

By order dated September 29, 1995, the Committee on Grievances of the Southern District of New York (the "grievance committee") received a complaint against Mr. Feinman in writing and concluded that the complaint against Mr. Feinman warranted prosecution. By order dated October 5, 1995, the grievance committee directed Mr. Feinman to show cause why discipline should not be imposed in connection with the allegations set forth in an accompanying five-count statement of charges accusing Mr. Feinman of knowingly making several false accusations against a judge and taking action which served merely to harass or maliciously injure another in violation of DR 8–102(b) and 7–102(a)(1), respectively. On November 16 and 19, 1995, Mr. Feinman submitted letters addressing the subject matter of the charges.

By letter dated January 19, 1996, the panel advised Mr. Feinman and committee counsel that it would "not be restricted to consideration of the provisions of the Code of Professional Responsibility" cited in the statement of charges and notified them that the panel intended also "to consider whether Mr. Feinman's conduct violated other provisions of the code, particularly DR 7–106(c)(1) and (6)." The letter gave committee counsel until February 2, 1996, to file an amended statement of charges and Mr. Feinman until February 23, 1996, to respond to the amended statement of charges.

On January 31, 1996, an amended statement of charges was submitted, which added no new substantive allegations, differing only from the initial statement of charges in that it cited additional provisions of the New York Code of Professional Responsibility, DR 7–106(c)(1) and (6). Mr. Feinman submitted an answer to the amended statement of charges on February 23, 1996.

On February 23, 1996, a second amended statement of charges was presented to the panel. The second amended statement of charges differed from the amended statement in that it added citations to DR 1–102(a)(5) and (8) to charges 1–5 and included two new charges covering statements made by Feinman not mentioned in the amended statement. By letter dated February 23, 1996, Mr. Feinman was afforded until March 15, 1996, to respond to the second amended statement of charges. Also in this letter, Mr. Feinman and committee counsel were asked to provide by March 15 "a letter that (a) identifies the witnesses they intend to call at the hearing, (b) lists the exhibits they intend to offer at the hearing and (c) sets forth their best estimate of the amount of time ... required for presentation of their respective cases."

In a letter dated February 25, 1996, Mr. Feinman stated that he "will neither participate in, nor respond to, nor appear at

any of the panel's further proceedings in this matter." In this letter, Mr. Feinman also stated that he "will not accept any future correspondence from the panel." As a result, when the panel's letter of February 23, 1996, was delivered to Mr. Feinman on February 26, 1996, it was returned with the notation, "delivery refused." On that same day, Mr. Feinman refused delivery of a Federal Express package which contained the second amended statement of charges.

The panel responded to Mr. Feinman's declarations that he refused to participate any further in the proceedings in a letter dated March 1, 1996. In that letter, the panel restated the time by which Feinman was to respond to the second amended statement of charges. In relevant part, the letter additionally stated:

> Should you refuse to participate further in these proceedings, as stated in your February 25 letter, notwithstanding being provided with notice and an opportunity to be heard, we will proceed in your absence and will render our report and recommendation to the Court with respect to the charges against you.
>
> In this regard, we note that a respondent's failure to cooperate in disciplinary

proceedings, in whole or in part, may be considered in aggravation of any sanction that may be recommended by the panel and imposed by the Court.

Mr. Feinman thereafter continued to refuse to accept any communications from either the panel or committee counsel.

Mr. Feinman and committee counsel were notified by letter of March 20, 1996, that an evidentiary hearing had been scheduled for April 23, 1996, at 10:00 a.m. Mr. Feinman refused delivery of this letter, and it was returned unopened. Mr. Feinman failed to appear at the scheduled hearing. By letter dated May 2, 1996, committee counsel advised the panel of his recommendation that Mr. Feinman's name be stricken from the roll of the United States District Court for the Southern District of New York based on a seven-count statement of charges on September 16, 1996, the panel submitted its report of Findings and Recommendations, finding that Counts One, Four, Five, a portion of Six, and Seven of the statement of charges should be sustained, and recommending that respondent be stricken from the roll of attorneys of the United States District Court for the Southern District of New York.[1] On February 11, 1997, the Southern

---

1. Count One alleged that Feinman wrote a letter dated September 19, 1994 in which he refers to "Judge Martin's crooked and corrupt decision in our case in violation of D.R. 1-102(a)(5), 1-102(a)(8), and 8-102(b)." Count Four alleged that in a motion to recuse District Judge John S. Martin, Jr., in the matter of *Groden v. Random House, Inc., et al.,* No. CV-94-1074, hereinafter, the *Groden* case, filed on September 1, 1994, Feinman stated that Judge Martin "is or was related by blood to, and is or was the brother of Terrence Martin with whom counsel worked ... [who] would be aware of unfavorable and conceivably pejorative facts relating to counsel for plaintiff." Since the statement was made without the qualification that it was based on information and belief, there was no investigation as to the veracity of the statement, and the statement is false, it is in violation of D.R. 8-102(b), 7-106(c)(1), 102(a)(5), and 102(a)(8). Count Five alleged that, in a letter dated January 11, 1995, to Judge Martin, Feinman referred to his adversary in the fol-

lowing manner: "He either accompanies President Clinton to the Mideast as his token New York Jewboy, or takes vacation trips as he pleases, and then thinks that he can just waltz into his law school classmate's courtroom and have his every wish fulfilled." In making this statement, Feinman is charged with violating D.R. 7-102(A)(1), 7-106(c)(6), and 1-102(A)(8). The relevant portion of Count Six alleged that Mr. Feinman, referring to defendants' application to brief the issue of plaintiff's motion requesting the involuntary disqualification of Judge Martin, wrote a letter that stated: "I have elected to treat the defendants' application to brief the § 144 issue, and their submission, as ex parte. You two fellas can play with each other all you want. I've gone upstairs to speak with The Men." This statement was alleged to be in violation of D.R. 1-102(A)(8) and 7-106(C)(6). Count Seven alleged that Mr. Feinman stated in an affirmation dated October 14, 1994, that the court's opinions are "more the product of ill will than of honest intellectual inquiry," in

District accepted the panel's Findings and Recommendations, and Judge Patterson, chairman of the grievance committee, ordered Respondent stricken from the roll of the members of the bar of that court.[2] On March 6, 1997, Feinman appealed the Southern District's decision to the Second Circuit. On July 27, 1998, the Second Circuit affirmed Judge Patterson's decision disbarring Mr. Feinman.

On December 13, 1996, this Court ordered Mr. Feinman to show cause why he should not be disciplined by this Court in light of the discipline by the Southern District. That order to show cause incorrectly stated that the Court was proceeding pursuant to Rule 4(g) based on discipline having been imposed by the Supreme Court of the State of New York, Appellate Division. In a letter dated January 14, 1997, responding to this order to show cause, Feinman notified this Court of that error and informed the Court that the Southern District's order had been vacated by order of Judge Patterson on December 13, 1996. On February 11, 1997, Feinman was again disbarred by the Southern District, and respondent submitted papers opposing reciprocal discipline by this Court in which he stated seven affirmative defenses: (1) he was denied due process in the Southern District proceeding in that he was not given notice or an opportunity to be heard; (2) there was an infirmity of proof establishing the alleged misconduct; (3) the imposition of discipline would be unjust; (4) the Southern District lacked jurisdiction under Article III of the Constitution to create a hearing panel composed of members of the bar in private practice; (5) there is no judicial opinion or decision

by the Southern District on which this Court could base an order of reciprocal discipline; (6) the Southern District order was procured by fraud and collusion; and (7) respondent was disabled by extreme poverty from mounting an effective defense in the Southern District proceeding. The matter was referred to this Court's Committee on Grievances, which thereafter designated Mr. Davis to investigate the allegations that led to respondent's discipline by the Southern District of New York. Mr. Davis thereafter recommended that this Court impose reciprocal discipline on Mr. Feinman.

## NATURE OF SUBSTANTIVE CHARGES

All four charges for which the Southern District panel disbarred Mr. Feinman arise out of the conduct of Mr. Feinman in the course of his representation of Robert Groden in a defamation action brought in February 1994 against Random House, The New York Times, and Gerald Posner. Groden is a writer who has written extensively on the subject of the assassination of President Kennedy, arguing that there existed a broad conspiracy against President Kennedy. Groden argued that he was defamed by an advertisement placed in the New York Times for Gerald Posner's book, *Case Closed*,[3] which stated that Mr. Groden, as well as certain other individuals who have contended that the assassination was the product of a conspiracy, were "guilty of misleading the American public."

On August 22, 1994, Judge Martin granted summary judgment in favor of the defendants in the *Groden* case. On Sep-

---

violation of D.R. 8–102(B), 7–106(C), 1–102(A)(5), and 1–102(A)(8).

2. The Southern District initially accepted the panel's Findings and Recommendations on November 4, 1996. However, on November 23, 1996, Feinman made a motion to vacate the court's order based on a claim that he never received notice of the panel's report. As a result, the order striking Feinman from the roll of members of the bar was vacated,

and respondent was ordered to show cause on January 11, 1997, why discipline should not be imposed. Thereafter, on February 11, 1997, the Southern District ordered Feinman stricken from the roll of the members of the bar of that court.

3. *Case Closed* argues that President Kennedy was killed by Lee Harvey Oswald, acting alone.

tember 1, 1994, Mr. Feinman filed a notice of motion on behalf of his client to "Reconsider, Reargue, Alter, Amend, Modify, Vacate, and Voluntarily Recuse" in which he made the following statement:

The learned trial judge either is or was related by blood to, and is or was the brother of Terrence L. ("Terry") Martin, with whom counsel for Plaintiff worked in close association during the mid–1970's at CBS News. It is unknown to Plaintiff's counsel whether Mr. Martin is still living, however it is believed by counsel that Mr. Martin did not view counsel in a favorable light and that, were he still alive, he would be aware of unfavorable and conceivably pejorative facts relating to counsel for Plaintiff that would tend to denigrate the credibility of counsel in the eyes of the Court.

On September 19, 1994, prior to the determination of this motion, Mr. Feinman wrote a letter to District Judge Royce C. Lamberth of the District of Columbia. Mr. Feinman's letter, in relevant part, follows:

The simple purpose of this letter is to create a record that I did not learn until late in the afternoon of Wednesday, September 14, 1994, that Mark Lane had instituted suit in your Court. It is my understanding that Mr. Lane's counsel was likewise unaware of the Groden litigation, until the firm of Baker & Hostetler submitted a copy of Judge Martin's crooked and corrupt decision in our case, to support their motion for summary judgment.... Mr. Davidson has already been supplied with a copy of my Notice of Motion directed at Judge Martin's serious judicial misconduct.

Copies of the letter were sent to the attorneys involved in the suit filed before Judge Lamberth, opposing counsel in the *Groden* case, and Judge Martin.

After denying Feinman's motion for reconsideration and recusal on September 23, 1994, Judge Martin issued an order to show cause why Feinman should not be sanctioned pursuant to Rule 11 for his unfounded accusations against the judge. On October 14, 1994, Mr. Feinman submitted an affirmation in response to Judge Martin's order which stated in relevant part that "[t]he pervasive errors, unfounded and wholly unwarranted statements, and judicial ad hominems against plaintiff (and now his counsel) in this Court's Memorandum compel me to regretfully conclude that these opinions were more the products of ill motive than of honest intellectual inquiry." At the hearing for this order on October 21, 1994, Judge Martin did not rule with respect to the issue of Rule 11 sanctions, but instead referred the matter to the grievance committee of the Southern District.

On November 7, 1994, Mr. Feinman wrote to Judge Martin in connection with the service of papers in opposition to plaintiff's motion requesting the involuntary recusal of Judge Martin from the *Groden* case, stating in relevant part:

I am rejecting service that was attempted by hand this afternoon of certain papers from the defendants' attorneys, and I am returning the envelope to Mr. Kovner herewith.

I have elected to treat the defendants' application to brief the § 144 issue, and their submission, as ex parte. You two fellas can play with each other all you want. I've gone upstairs to speak with The Men.

On November 22, 1994, the Second Circuit denied plaintiff's petition for a writ of mandamus ordering the recusal of Judge Martin in the *Groden* case on November 22, 1994. Judge Martin denied the motion to recuse himself pursuant to § 144 by order dated December 2, 1994. On January 11, 1995, Mr. Feinman hand-delivered a nine-page letter to Judge Martin, with a copy to opposing counsel. In this letter, Mr. Feinman complained of a dispute that had developed with respect to the contents of the joint appendix and record of his appeal of Judge Martin's grant of summary judgment. Mr. Feinman stated:

I am very impressed with Mr. Kovner's brazenness. He either accompanies President Clinton to the Mideast as his token New York Jewboy, or takes vacation trips as he pleases, and then thinks that he can just waltz into his law school classmate's courtroom and have his every wish fulfilled. It must be nice to have friends grant your every whim.

Upon recommending that this Court impose reciprocal discipline on Mr. Feinman, Mr. Davis' statement of charges states that "the said discipline by the United States District Court for the Southern District of New York constitutes proper and sufficient ground for reciprocal discipline of Roger Bruce Feinman pursuant to Rule 1.5(b)(2) of the Local Civil Rules of the United States District Court for the Eastern District of New York."

## DISCUSSION

Respondent has already been disciplined by the Southern District of New York.[4] Accordingly, the issue before the Court is whether it is appropriate to impose reciprocal discipline. Reciprocal discipline is a means of sanctioning attorneys for their misconduct in another forum. An attorney seeking to avoid reciprocal discipline carries a heavy burden. Under Local Civil Rule 1.5(d)(2), reciprocal discipline will be imposed

unless the attorney concerned establishes by clear and convincing evidence (i) that there was such an infirmity of proof of misconduct by the attorney as to give rise to the clear conviction that this court could not consistent with its duty accept as final the conclusion of the other court, or (ii) that the procedure resulting in the investigation or discipline of the attorney by the other court was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process, or (iii) that the

imposition of discipline by this court would result in grave injustice.

Respondent's submission in response to this Court's order to show cause dated December 13, 1996, stated seven affirmative defenses: (1) he was denied due process in the Southern District proceeding in that he was not given notice or an opportunity to be heard; (2) there was an infirmity of proof establishing the alleged misconduct; (3) the imposition of discipline would be unjust; (4) the Southern District lacked jurisdiction under Article III of the Constitution to create a hearing panel composed of members of the bar in private practice; (5) there is no judicial opinion or decision by the Southern District on which this Court could base an order of reciprocal discipline; (6) the Southern District order was procured by fraud and collusion; and (7) respondent was disabled by extreme poverty from mounting an effective defense in the Southern District proceeding. In response to Anthony Davis' report and statement of charges, Mr. Feinman later submitted a more detailed argument asserting that (1) the Southern District proceeding was conducted in such a manner as to violate due process and, in conjunction with that violation, was infected with fraud and collusion, and (2) the disbarment of respondent is an excessively harsh punishment.

### Due Process in the Southern District Proceedings

Procedural due process is a flexible concept, and the procedures to be afforded in a proceeding depend on the type of proceeding, the interests of both the state and the attorney subject to discipline, and the risk of erroneous deprivation of the attorney's interest. *See In re Jacobs*, 44 F.3d 84, 90 (2d Cir.1994) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). In a disciplinary

---

4. It should be noted that the Southern District's disbarment has also been the basis of reciprocal discipline barring respondent from practicing before the courts of the State of New York. *See In the Matter of Roger Bruce Feinman*, 246 A.D.2d 262, 676 N.Y.S.2d 505 (1998).

case, due process requires only that respondent be given notice of the charges against him and an opportunity to be heard. *See Jacobs*, 44 F.3d at 90.

Mr. Feinman first argues that he was not given notice of or an opportunity to be heard in opposition to the Southern District's second amended statement of charges. In his submissions, Feinman admits that he sent a letter dated February 25, 1996, in which he stated that he "will neither participate in, nor respond to, nor appear at any of the panel's further proceedings in this matter." Mr. Feinman also stated that he would "not accept any future correspondence from the panel." Thereafter, Mr. Feinman returned the panel's letter of February 23, 1996 with the notation "delivery refused" and telephoned Federal Express to refuse delivery of a package they were holding for him. The Federal Express package contained a copy of the second amended statement of charges and the letter contained a time frame within which Mr. Feinman was required to submit his papers in opposition to the second amended statement of charges. Further, Mr. Feinman refused delivery of these two communications despite the fact that he knew that they related to the disciplinary proceedings against him.

Given that Mr. Feinman specifically refused delivery of the communications, the absence of service of which he now cites as a violation of due process, his complaints are unavailing. It borders on the frivolous for a party to raise a due process claim when he has "earlier attempted to thwart the very notice he complains about not receiving." *United States v. Bolton*, 781 F.2d 528, 533 (6th Cir.1985); *see also Patmon and Young Professional Corp. v. Commissioner of Internal Revenue*, 55 F.3d 216, 218 (6th Cir.1995) (stating that "a taxpayer should not be allowed to defeat actual notice by deliberately refusing delivery of ... notice"); *Erhard v. Commissioner of Internal Revenue*, 87 F.3d 273, 275 (9th Cir.1996) (refusing to counte-

nance the party's refusal of a notice which "she held in her hands and simply refused to open or read"). "[I]t is well-settled that the effect of a written notice cannot be avoided by refusing service of that notice." *Reliance Insurance Co. v. Mast Construction Co.*, 159 F.3d 1311, 1318 (10th Cir. 1998).

Mr. Feinman also argues, without citation of authority, that the Southern District lacked the power to create a hearing panel composed of members of the bar in private practice "to perform adjudicative functions in original disciplinary actions instituted within that court." For that reason, Mr. Feinman argues that his disbarment in the Southern District is not entitled to "faith and credit or comity by this Court." This argument must fail because it proceeds from the fundamentally flawed premise that the panel that authored the findings and recommendations for submission to the Southern District grievance committee was the ultimate arbiter. The panel did not perform any "adjudicative functions." Instead, it was the role of the panel to "advise the committee whether prosecution of a federal disciplinary action is required" and to issue a report and recommendation to the grievance committee. *In the Matter of Friedman*, No. MC–93–0180, 1996 WL 705322, at *1 (E.D.N.Y. Nov.26, 1996). It is the ultimate responsibility of the grievance committee, after conducting a hearing, if necessary, to arrive at a final determination.

Mr. Feinman further argues that, because there is no judicial opinion by the Southern District setting forth findings of fact and conclusions of law, "there is no intelligible basis upon which this Court may determine whether reciprocal discipline ought to be imposed." Mr. Feinman's argument, however, even to the extent that it could be construed as a due process violation, is contradicted by the plain language of the February 11, 1997 order in which Mr. Feinman was disbarred. That order specifically accepted

the findings of the panel of attorneys. Those findings included a detailed explication of the facts of Mr. Feinman's case.

Mr. Feinman also contends that the Southern District's disbarment order was obtained through fraud, deceit, and multiple false misrepresentations. Mr. Feinman's argument is based on his statement that he was never served with a copy of the second amended statement of charges, a fact that Mr. Feinman insists was known by the investigative panel to the Southern District grievance committee. Mr. Feinman states that despite this knowledge there are several statements in the findings and recommendations which state that he was served with the second amended statement of charges, thereby given notice and an opportunity to respond to the charges, and refused to avail himself of that opportunity.

Mr. Feinman further argues that the purpose of this fraud on the court was to convince the grievance committee, and later the Second Circuit on appeal, that he purposefully refused to respond to the second amended statement of charges despite notice and an opportunity to be heard. Mr. Feinman states that in making these false statements the panel sought to convince these courts of his "contempt of the disciplinary proceedings as a circumstance in addition to, or in aggravation of, his alleged professional misconduct." In reality, Mr. Feinman explains, he never received the second amended statement of charges or the letter granting him time to respond because in each case he had refused delivery.

This Court's prior discussion of the adequacy of service in this case notwithstanding, Mr. Feinman's argument that the panel's findings and recommendation contained false misrepresentations concerning service of process is belied by the statement of facts within that document. The

panel's report states in a clear manner Mr. Feinman's position with respect to the Southern District's proceedings. Not only is Mr. Feinman's letter declaring his refusal to participate any further in the disciplinary proceedings reproduced in its entirety in the panel's findings and recommendation, but the procedural history section of that document also indicates each instance in which Mr. Feinman refused delivery of letters or packages. As the record presented to both the Southern District grievance committee and the Second Circuit makes no false representations concerning Mr. Feinman, Mr. Feinman's arguments are without merit.

In all events, any impression formed by the Southern District grievance committee and Second Circuit of Mr. Feinman's contempt for these disciplinary proceedings is fully supported by the record, even as Mr. Feinman would describe it. Mr. Feinman admits that he wrote a letter dated February 25, 1996, in which he stated that he would no longer participate in the Southern District's disciplinary proceedings. Thereafter, he refused delivery of each and every communication he was sent by the panel up until the date he was ordered stricken from the roll of the members of the bar of that court.

Finally, Mr. Feinman argues that because of extreme poverty he was unable to mount an effective defense. Even were such a defense available to an attorney protesting the imposition of reciprocal discipline, the record in this case fails to support such an allegation. Mr. Feinman submitted extensive responses in the Southern District disciplinary proceeding, including one that laid out thirty-nine affirmative defenses. In fact, up until his letter of February 25, 1996, Mr. Feinman defended his positions vigorously despite his alleged impoverishment. Instead, it is patently clear to this Court that, to the extent that Mr. Feinman did not mount an

effective defense to the Southern District disciplinary proceedings, the reason lies solely with his own refusal to participate in the proceedings after February 25, 1996.

*Hearing*

Mr. Feinman requests a hearing to present his defenses before this Court. In his prior proceedings before the Southern District, however, Mr. Feinman had ample opportunity to present evidence, despite the fact that he refused to avail himself of that opportunity at the Southern District hearing. Moreover, Mr. Feinman has failed to come forward with any new evidence on any issue or shown how, if at all, the taking of additional testimony would shed light on any of the issues before the Committee on Grievances. The risk of an erroneous deprivation of respondent's rights is low, and a full evidentiary hearing is not contemplated by the local rules or required by due process considerations. *See* Local rule 1.5(d)(1); *Jacobs,* 44 F.3d at 90–91. The hearing requested by Mr. Feinman would merely duplicate the evidence presented at the earlier court proceedings-an outcome clearly reject by the Court of Appeals. *See In re Friedman,* 51 F.3d 20 (2d Cir.1995) (holding that the rules "do not require a hearing. Rather, they require the opportunity to be heard."). Because Mr. Feinman has admitted to the facts underlying the misconduct, he has not raised any issue requiring a hearing. *See* Local Rule 1.5(d)(1) & (4). Moreover, Mr. Feinman has had an opportunity to be heard in this proceeding. He was appraised of the charges against him and the proposed discipline, and he then submitted a detailed response.

*Infirmity of Proof*

Mr. Feinman also claims that "[t]here was such an infirmity of proof establishing the alleged misconduct as to give rise to the clear conviction that this court could not, consistent with its duties, accept as final the conclusion of the other court." While it is true that, should Mr. Feinman prove the above state of affairs by clear and convincing evidence, this Court would not impose reciprocal discipline, Mr. Feinman must do more than state the existence of his defense to carry that burden. Mr. Feinman presents no evidence in support of his statement and, in fact, admits to engaging in the conduct for which he was disbarred by the Southern District. Therefore, this Court finds that Feinman has failed to prove by clear and convincing evidence that there was any infirmity of proof whatsoever establishing the alleged misconduct in the Southern District proceeding.

*Grave Injustice: Severity of Discipline Imposed*

Mr. Feinman concludes by arguing that the imposition of discipline would be unjust given an extensive list of factors that this Court should weigh against imposing the most severe form of discipline, disbarment. In substance, Mr. Feinman's list of mitigating factors include nothing more than the virtue of the underlying defamation action, his full cooperation during the disciplinary proceedings, the Southern District's "discipline by ambush," and, without citing a single other case, the extent of discipline imposed for similar infractions in other cases.

As discussed supra, however, Mr. Feinman's conduct during the disciplinary proceedings exhibited anything but cooperation. In addition, the decision of the Southern District, adopting the findings and recommendations of the panel, reflects that it gave careful consideration to the severity of the penalty imposed on Mr. Feinman. In a letter dated March 1, 1996, Mr. Feinman was warned that his with-

drawal from the disciplinary proceedings would be taken into account in the level of discipline imposed. In disbarring Mr. Feinman, the Southern District made particular note that it took into account Mr. Feinman's conduct during the disciplinary proceedings as an aggravating factor. The findings and recommendations submitted by the panel to the Southern District grievance committee stated that "Mr. Feinman not only failed to cooperate in connection with these proceedings, he refused to do so, openly flouting the panel and the authority of the Court to impose discipline upon him."

While Mr. Feinman argues to this Court that it has not been shown that he injured third parties, such an argument provides further evidence that Mr. Feinman continues to fail to appreciate the impact of the conduct here at issue. The conduct for which Mr. Feinman was brought before the Southern District exhibited a disdain for the legal system, and his conduct during the disciplinary proceedings repeated that pattern, regardless of Mr. Feinman's perceived societal value of his cause to reveal government conspiracy. In any event, by arguing that defects in the Southern District proceedings justify lesser discipline, Mr. Feinman seeks a review of the merits of the state proceedings that is beyond the circumscribed scope of review in reciprocal disciplinary proceedings. *See Jacobs,* 44 F.3d at 88.

## CONCLUSION

Having failed to present any disputed factual issue requiring an evidentiary hearing or any legal issue concerning the constitutional sufficiency of the Southern District's disciplinary proceeding, respondent is hereby disbarred, and his name shall be stricken from the roll of attorneys.

The Clerk is directed to furnish a filed copy of the within to all parties.

Dated: Brooklyn, New York
March 18, 2000.

/s/ CHARLES P. SIFTON
Charles P. Sifton, Chief Judge and Chairman of the Committee on Grievances

/s/ ARTHUR D. SPATT
Arthur D. Spatt, U.S.D.J. and Member of the Committee on Grievances

/s/ DAVID G. TRAGER
David G. Trager, U.S.D.J. and Member of the Committee on Grievances

/s/ FREDERIC BLOCK BY CPS
Frederic Block, U.S.D.J. and Member of the Committee on Grievances